FRENCH *against* PEARCE.

Where a person claiming title to land under a deed of doubtful construction as to the boundaries, occupied such land as his own to what he supposed to be the dividing line between him and the adjoining proprietor, without any objection from such adjoining proprietor; it was held, that such occupation was presumptive evidence of the true place of the line.

*Litchfield,*
June, 1831.

French
*v.*
Pearce.

To constitute an adverse possession of land, such as, if continued for fifteen years, will establish a title in the possessor, it is necessary that he should actually hold the land *as his own*, during that period, in opposition to the constructive possession of the legal proprietor ; but the motive or intention of the possessor in taking or retaining possession, is otherwise immaterial with respect to its adverse character.

Therefore, where the owner of land bordering on the land of another, through a mere misapprehension of the place of the dividing line, occupied and possessed, as his own, a portion of land beyond that line, for more than fifteen years ; it was held, that this was an adverse possession, sufficient to establish a title in the possessor.

THIS was an action of trespass *quare clausum fregit ;* tried at *Litchfield, February* term, 1831, before *Williams,* J.

The plaintiff and defendant were adjoining proprietors of land ; and the land in controversy was the border between them, which was wood-land, unfenced. Both parties claimed under *William French,* the father of the plaintiff and of the defendant's wife. The plaintiff's title was admitted, unless the land was conveyed to the defendant's wife, by a deed dated the 11th of *May* 1809 ; in which the line on the side adjoining the plaintiff was particularly described. A part of the description was " from a butternut tree a straight line to *Platt's* corner —said piece being the same land which the grantor bought of Rev. Mr. *Benedict.*" The defendant contended, that as the deed to his wife referred to the land purchased of Mr. *Benedict,* he might shew where were the bounds of that lot ; and claimed, that by those bounds, there was not a straight line from the butternut tree to *Platt's* corner. This was accompanied with evidence, by which he claimed to have shewn, that he had occupied and possessed the land in question for more than fifteen years, although not included in the straight line mentioned in the deed. The plaintiff denied the occupation of the defendant ; and denied also any difference in bounds in consequence of the reference to Mr. *Benedict's* deed, and any adverse possession by the defendant.

The judge charged the jury, that in considering where were the boundaries of this lot of the defendant's wife, if the description in the deed was doubtful, they might take into consideration the possession or occupation of the defendant, for the purpose of determining those bounds. But if they should find, that the defendant had possessed the land in question, for more than fifteen years, claiming and intending only to occupy to the true line, as described in his deed, and no further, then his pos-

Litchfield,
June, 1831.

French
v.
Pearce.

session must be referred to his deed, and it would not be adverse to the plaintiff ; and the jury, notwithstanding such possession, must look to the deed, to determine the line of division.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial for a misdirection.

*J. W. Huntington* and *J. Strong*, in support of the motion, remarked, That the charge contained this principle ; that if a person goes into possession of land, by virtue of a deed or any other title, and occupies to certain limits, claiming and believing that his title extends to those limits, at the same time intending to occupy only so far as his title extends, such possession will not be adverse beyond his real or valid title. This principle, they contended, could not be sustained. The statute, which has been construed to give the occupant of land a title to it, after fifteen years possession, is a statute of repose, founded on public policy, and in its spirit embraces all cases, where a person, whatever may be his motive, possesses land *as his own*, for fifteen years, and the true owner neglects to assert his claim within that period. The charge makes a distinction in the occupancy of land, founded on the *intent* of the occupant, and virtually repeals the statute, in all cases, except where the occupant commences his possession by wilful trespass, and continues it by intentional wrong. The possession in question was clearly under a claim or colour of right, and in that respect in conformity to the principles adopted in the state of *N. York. Brandt* d. *Walton* v. *Ogden*, 1 *Johns. Rep.* 156. *Jackson* d. *Griswold* v. *Bard*, 5 *Johns. Rep.* 230. It amounted to a disseisin of the plaintiff; and the defendant might have been sued as a disseisor. *Small* v. *Proctor*, 15 *Mass. Rep.* 495. *Boston Mill Corporation* v. *Bulfinch*, 6 *Mass. Rep.* 229. *Knox* & al. v. *Kellogg*, 14 *Mass. Rep.* 200.

*Bacon*, contra, insisted, That the defendant was not entitled to a new trial. The first part of the charge was altogether in his favour. He was allowed to refer the jury to his own acts, for the purpose of corroborating *his* construction of the deed. If there is any one who can justly complain of this part of the charge, it is not the defendant.

The other part of the charge was unexceptionable. To acquire a title by possession, that possession must be *adverse*. But land held by mistake, through ignorance of the dividing

line, is not held adversely.    Such a possession does not operate a disseisin.    *Brown* v. *Gay,* 3 *Greenl.* 126.    To constitute an adverse possession, it must be under a claim of title *hostile* to the real owner. 1 *Swift's Dig.* 163.    Does a man, who encloses the land of another, through a mistaken apprehension of the dividing line, and not with a view to encroach upon the land of another, or to enjoy what is not his own, evince any hostility to the rights of the true owner ?

HOSMER, Ch. J.  Whether the line of occupancy was the dividing line between the parties, was the point of controversy between them.    The jury were charged, so far as relates to the deed, that if the line described in it was doubtful, they might take into consideration the possession and occupation of the defendant, for the purpose of determining it.    This opinion seems not to be questioned ; nor is it questionable.    An occupation of land, by the defendant, as his own, under the plaintiff's eye, to what he supposed to be the dividing line between him and the plaintiff, and which, for many years, the plaintiff permitted without a question, from the mutual assent of the parties, is strong presumptive evidence of the true place of the line. 1 *Phill. Ev.* 420–22.

On the point of title by fifteen years possession, as the only objection made at the trial, was, that the possession of the defendant was not adverse,  it must be assumed, that none other existed.    Of consequence, the controversy is confined to that single point.

By adverse possession is meant a possession hostile to the title of another ; or, in other words, a disseissin of the premises ;  and by disseisin is understood an unwarrantable entry, putting the true owner out of his seisin. *Co. Litt.* 153. *b.* 181.

The enquiry, then, is precisely this ; what must be the character of the act, which constitutes an adverse possession ?

This question was directly answered, in *Bryan* v. *Atwater,* 5 *Day* 181., and by this Court.  A clear and unquestionable rule was intended to be given.  The court commenced the expression of their opinion, by saying : " It will be necessary to ascertain *precisely* the meaning of the terms *adverse holding* or *adverse possession.*"  The first principle asserted in that case, is, that to render a possession *adverse,* it is not necessary that it it should be accompanied with a claim of title and with the denial of the opposing title.  The case next affirms, that

possession is never adverse, if it be under the legal proprietor *Litchfield,* and derived from him. After these preliminaries, it is enqui- June. 1831. red : " But more particularly, what, in point of law, is an ad- French verse possession ? It is," say the court, " a possession, *not* *v.* *under the legal proprietor, but entered into without his consent,* Pearce. *either directly or indirectly given.* It is a possession, by which he is disseised and ousted of the lands so possessed." That there should remain no doubt, they next enquire, what consti- tutes a disseisin ? After shewing negatively, that it is not requisite to enter claiming title, or denying the title of the legal owner, they remark affirmatively, that it is only necessary for a person to enter and take possession of land *as his own;* to take the rents and profits to himself ; and to manage with the property as an owner manages with his own property ; that is, the person thus possessing must act as if he were the true owner and accountable to no person for the land or its avails. A criterion is then given to determine whether a possession is adverse. " It is only necessary to find out," say the court, " whether it can be considered *as the constructive possession* *of the legal proprietor.*"

I have been thus particular in analyzing this case, in which the reasons were drawn up, by a very able and eminent jurist ; as it presents, in the plainest language, a sure and most intelli- gible land-mark, to ascertain when a possession is adverse. It is peculiarly observable, that by the reasons given, anxiously laboured as they were, it was intended to put the question at rest for the future. The possession alone, and the qualities im- mediately attached to it, are regarded. No intimation is there as to the *motive* of the possessor. If he intends a wrongful disseisin, his actual possession for fifteen years, gives him a title ; or if he occupies what he believes to be his own, a similar pos- session gives him a title. Into the recesses of his mind, his motives or purposes, his guilt or innocence, no enquiry is made. It is for this obvious reason ; that it is the visible and adverse possession, with an intention to possess, that constitutes its ad- verse character, and not the remote views or belief of the pos- sessor.

It is not necessary that I should proceed further, as the point of decision, in the case before us, has been settled, by this Court, and with great precision. At the same time, it may be the more satisfactory to shew, that the determination here is in harmony with the decisions of other courts.

*Litchfield,*
*June, 1831.*
*French*
*v.*
*Pearce.*

In *Westminster-Hall*, the character of an adverse possession is well established. The possession of a person denying the title of the owner, or claiming the premises, or taking the whole rents and profits without accounting, is held sufficient evidence of actual ouster. *Doe* d. *Fisher* & al. v. *Prosser, Cowp.* 217. *Doe* d. *Hellings* & ux. v. *Bird,* 11 *East* 49. *Stocker* v. *Berny,* 1 *Ld. Raym.* 741. S. C. by the name of *Stokes* v. *Berry,* 2 *Salk.* 421. The extent of the doctrine is defined by the following considerations. The possession of a tenant in common is held not to be adverse, without actual disseisin or its equivalent, as he is presumed to possess for his fellow commoner ; but the possession of an individual entering not under another, is adverse, by a perception of the profits only to his own use.

In the state of *New-York*, the entering on land under *pretence* of title, or under a claim *hostile* to the title of the true owner, constitutes an adverse possession. *Brandt* d. *Walton* v. *Ogden,* 1 *Johns. Rep.* 156. *Jackson* d. *Griswold* v. *Bard,* 4 *Johns. Rep.* 230. *Jackson* d. *Bonnel* & al. v. *Sharp,* 9 *Johns. Rep.* 162.

To the same effect is the law of *Massachusetts.* " To constitute an actual ouster," said *Parsons*, Ch. J., " of him who was seised, the disseisor must have the actual exclusive occupation of the land, claiming to hold it against him who was seised, or he must actually turn him out of the possession." *Kennebeck Purchase* v. *Springer,* 4 *Mass. Rep.* 416. 418. *Boston Mill Corporation* v. *Bulfinch,* 6 *Mass. Rep.* 229. It is obvious, that a person who takes possession, does not the less claim to hold it against him who before was seised, because he conscientiously believes, that he has right to possess.

The law of *Maine*, so far as it is expressed in the case of *Kennebeck Purchase* v. *Laboree* & al. 2 *Greenl.* 275., is in perfect harmony with that of the states already mentioned. " The doctrine on this subject," said *Mellen*, Ch. J., " seems to be plain and well settled. A possession must be adverse to the true owner, in order to constitute a disseisin. The possessor must claim to hold and improve the land *for his own use,* and exclusive of others." He next states, that in a count on the demandant's seisin, it was never incumbent on the tenant to prove more than his continued possession and occupancy for thirty years next before the commencement of the action, *using and improving the premises after the manner of the own-*

er *of the fee;* and he then subjoins, that such possession, un-
less explained, affords satisfactory evidence to the jury, that
such tenant claimed to hold the land as his own.

In the case of *Brown* v. *Gay,* 3 *Greenl.* 126. the question
was, whether the tenant was in possession of certain land by
disseisin. He owned a lot denominated No. 3., and was in pos-
session of lot No. 4., claiming that it was part of the former
lot. He was, therefore, in possession through mistake. This
principle was advanced, by the court, to wit : " If the owner
of a parcel of land, through inadverency or ignorance of the
dividing line, includes a part of an adjoining tract within his
enclosure, this does not operate a disseisin, so as to prevent the
true owner from conveying or passing the same by deed."

If the learned court meant to lay down the position, that
although the possession was adverse and a disseisin, yet that it
was of such a character as not to prevent the owner from
transferring the land by deed, the case has no bearing on the
one before us. But if it was intended to declare, that there
was no disseisin at all, by reason of the before mentioned mis-
take, I cannot accede to the proposition. There was a pos-
session ; it was not under the true owner, but it was under a
claim of right ; and the rents and profits (if any) were receiv-
ed and appropriated to the possessor's use, without any suppo-
sed or assumed accountability. This is a disseisin, by all the
cases on the subject, with every mark or *indicium* of one upon
its face. If the possession were incidental to the taking of
something off the property, it would be a trespass only. But
when the possession is a permanent object, under a claim of
right, however mistaken, what can be a disseisin, if this is not ?
That the possessor meant no wrong, might be very important, if
he were prosecuted for a crime ; for *nemo fit reus, nisi mens sit
rea.* But the motive, which induced the taking possession, is re-
motely distant from the possession in fact under a claim of right,
and in no respect tends to qualify or give character to the act.
It was adverse possession and disseisin (innocently happening)
with the full intention of the mind to possess exclusively ; and
by necessary consequence, a seclusion of the owner from the
seisin of his property.

I agree with the learned court, that the intention of the
possessor to claim adversely, is an essential ingredient. But
the person who enters on land believing and claiming it to
be his own, does thus enter and possess. The very nature of

*Litchfield,*
June, 1831.

French
*v.*
Pearce.

the act is an assertion of his own title, and the denial of the title of all others.   It matters not, that the possessor was mistaken, and had he been better informed, would not have entered on the land.   This bears on another subject—the moral nature of the action ; but it does not point to the enquiry of adverse possession.   Of what consequence is it to the person disseised, that the disseisor is an honest man ?  His property is held, by another, under a claim of right ; and he is subjected to the same privation, as if the entry were made with full knowledge of its being unjustifiable.

In the case of *Ross* v. *Gould*, 5 *Greenl.* 204. it is said, "a disseisin cannot be committed by mistake, because the intention of the possessor to claim adversely, is an essential ingredient in disseisin."  I do not admit the principle.  It is as certain that a disseisin may be committed by mistake, as that a man may by mistake take possession of land, claiming title and believing it to be his own.  The possession is not the less adverse, because the person possessed intentionally, though innocently.   But in the moral nature of the act, there is undoubtedly a difference, when the possessor knowingly enters by wrong.

I have been the more particular in my observations, for two reasons.   The first is, that the evidence of adverse possession, which is of very frequent occurrence, might be placed on grounds clear and stable : The next, from a serious apprehension that in the law of disseisin, an important change is inadvertently attempted.   Adopt the rule, that an entry and possession under a claim of right, if through mistake, does not constitute an adverse possession, and a new principle is substituted.   The enquiry no longer is, whether visible possession, with the intent to possess, under a claim of right, and to use and enjoy as one's own, is a desseisin ; but from this plain and easy standard of proof we are to depart, and the invisible motives of the mind are to be explored ; and the enquiry is to be had, whether the possessor of land acted in conformity with his best knowledge and belief.

In the case before us, the plaintiff adduced evidence to show, that he entered on the land in question, and possessed it more than fifteen years, uninterruptedly and exclusively, under a claim and belief of right, and appropriating to his own use, without account, all the rents and profits.   This was adverse

possession and disseisin, and gave him title under the law of *Litchfield,*
the state.

Upon this principle, the charge was incorrect, and a new
trial is advised.

The other Judges were of the same opinion, except PETERS,
J., who was absent.

New trial to be granted.