(13 Misc. Rep. 428.)

### MICHAEL v. KRONTHAL.

(Superior Court of New York City, Special Term. June, 1895.)

1. MASTER AND SERVANT—COMPENSATION OF SERVANT.

Defendant agreed to render services to plaintiff for 20 per cent. of the net profits of plaintiff's business, to be paid at the termination of the agreement. It was also agreed that defendant should receive $40 per week, to be charged on account of his share of the net profits. Held, that defendant was entitled to the $40 per week, without regard to the profits or losses of the business, and at the expiration of the agreement the amount received was to be charged against the profits.

2. INJUNCTION—RESTRAINING ACTION.

An action in a district court of New York City on a contract will not be enjoined because defendant has a counterclaim in excess of the amount that can be pleaded in that court, where he made the contract sued on after his claim against plaintiff had accrued.

3. SAME—IMPECUNIOUS PLAINTIFF.

An action in a district court of New York City to recover money alleged to be due from defendant to plaintiff on a contract for services will not be enjoined on the ground that plaintiff is impecunious, and indebted to defendant in an amount too great to be pleaded as a counterclaim in the district court, where such indebtedness existed at the time the contract sued on was made.

Action by Leon Michael against Louis Kronthal.  Plaintiff moves to continue an injunction pendente lite.  Denied.

Blumenstiel & Hirsch, for the motion.

H. H. Ritterbusch, opposed.

McADAM, J.  The defendant entered plaintiff's employment as salesman December 12, 1894, under a contract providing (1) for the payment to defendant for the services to be rendered by him of a sum equal to 20 per cent. of the net profits of the business conducted by plaintiff, to be paid by the plaintiff at the termination of the agreement, to wit, December 12, 1895; (2) that the defendant receive $40 per week, and that the same be charged on account of his share of said net profits.  The parties differ as to the construction to be placed upon the instrument.  The defendant claims he is entitled to $40 per week.  At the expiration of the year the profits are to be figured up.  If they exceed $40 per week, he shall have the overplus; otherwise he shall be charged with $40 per week, and credited with the share of the profits coming to him, the balance as then determined to be a debt owing by him to the plaintiff.  The plaintiff appears to have assented to this construction of the contract by paying to the defendant the sum of $40 per week thereunder up to June 8, 1895, when he declined to continue the payments.  He now claims that by the contract the defendant is entitled to $40 per week, "provided the said defendant's share of the profits of the plaintiff's business under said agreement shall amount to $40 per week," and not otherwise; that there have been no profits for several weeks past, and consequently the defendant is entitled to nothing.  It is plain, from an inspection of the contract, that the defendant's contention is right; and this conclusion is aided and confirmed by the construction which the parties themselves have by their acts put upon the instrument.  Chicago v. Sheldon, 9 Wall. 50, 54; Topliff v. Topliff, 122 U. S. 121, 131, 7 Sup. Ct. 1057; French v. Pearce, 8 Conn. 439; Onthank v. Railroad Co., 71 N. Y. 194, 197; Jennison v. Walker, 11 Gray, 423; Bish. Cont. § 598.  The employment was by the year, and it is well understood that profits vary according to the season and business prosperity; so that it would be next to impossible to determine the net gains for the term until the expiration of the year, and hardly half of the time had run when the plaintiff undertook to strike a balance in his own favor.  The defendant, following out his theory of the contract, brought an action in the Ninth judicial district court to recover the $40 due thereon for the week ending June 8, 1895, and threatens to institute weekly actions for said sum until the termination of the contract.  The plaintiff thereupon brought this action, founded on his construction of the contract, to recover the sum of $478.79 as moneys overdrawn by the defendant, and $700 on a note indorsed by the defendant, which fell due January 1, 1894.  The contract in question was made nearly 12 months after the maturity of this note.  The plaintiff seeks to restrain the action in the district court and to enjoin the commencement of any other action therein until this suit can be determined, basing his application upon (1) his construction of the contract, and (2) the fact

that his counterclaim is unavailing, in the district court on account of its limited jurisdiction. As the court agrees with the defendant in his construction of the contract, there is no equity in the first claim for relief. Having an adequate remedy at law by independent action upon the $700 note, the plaintiff must also fail on the second. True, he cannot avail himself of the $700 counterclaim in the district court action; but he knew, when he made the contract, that, in case action was brought upon it, his counterclaim could not be introduced in a court of limited jurisdiction, and that defendant had the right to enforce the contract therein. The defendant is therefore simply availing himself of privileges which both parties contemplated when they made the agreement. The further fact that the defendant is impecunious does not alter the legal status of the parties, for the plaintiff knew when he made the contract that the defendant was his debtor on the promissory note to the extent of $700, and made no provision in the agreement for its payment.

There might be cases in which a party having a counterclaim which cannot be used in inferior jurisdictions could on equitable grounds enjoin actions therein, but this is not one of them. To hold otherwise would drive the defendant out of the plaintiff's employment, and terminate the contract, contrary to its intention, at the mere will of the plaintiff; for the weekly payment agreed upon was evidently designed to provide the defendant with living expenses, and, if that sum is cut off, he will naturally be driven to seek other means of livelihood. Equity often interferes with suits at law by injunction for the purpose of preventing or stopping useless or vexatious litigations. Hil. Inj. (3d Ed.) 292, § 41. The suit brought by the defendant, and those which he threatens to bring, are founded on the plaintiff's breach of an express promise to make the defendant certain weekly payments, on which an independent right of action accrues as fast as each matures. Such actions can neither be called useless or vexatious, for they have legal sanction, and spring from the very nature of the contract and plaintiff's default. The defendant cannot be compelled to put the claims into one suit, for this would require him to wait nearly six months, until all the payments become due; and the contract stipulates that he is to receive the stipulated stipend weekly. Whatever is due when suit is brought must be included therein, or it will be barred. Smith v. Dittenhoefer, 1 City Ct. R. 143. Beyond this, the defendant is under no legal restraint.

An application to a court of equity for the exercise of its prohibitory powers or restrictive energies must come recommended by the dictates of conscience, and be sanctioned by the clearest principles of justice. The plaintiff, knowing that the defendant owed $700 on the note, employed him to perform services, not in payment or reduction of the debt, but for $40 per week, to be paid promptly as the services were rendered, the one being deemed the equivalent of the other; and this result can be accomplished just as the parties intended. The plaintiff may use his demand as a counterclaim to whatever extent the law permits, but there is no equity which entitles him to have the counterclaim so allowed extended to meet the

peculiar situation in which he by his own voluntary acts has placed himself.

For these reasons the motion to continue the injunction must be denied, and the temporary injunction dissolved.