Spear, J.
Evidence was given at the trial by the plaintiff below tending to maintain his title to the land in dispute, and by the defendant below tending to rebut that proof. Also evidence by defendant to establish her defense of the statute of limitations. Plaintiff in rebuttal, gave evidence tending to show that the predecessor in title of defendant had, within twenty-one years before the bringingof the action, and while in possession, admitted that the title was in another, and had offered to purchase the land of that other. Also evidence tending to show that defendant herself, or her husband in her hearing, and in the presence of plaintiff, at the time of a sale at which plaintiff bought lots called 15 and 16, made declarations admitting that the true line between her land and said lots was five feet north of the south line of her building. And, in surrebuttal, defendant gave evidence in contradiction thereof. It appeared in evidence, apparently without question, that in the year 1869 or 1870, a tenant of the then owner of adjoining lands now owned by defendant, constructed a substantial building thereon which extended over and upon the strip in dispute, covering the same, and that as early as May, 1872, defendant’s predecessor in title purchased the land adjoining the strip on the •north, including the building, and then entered upon the whole so covered by the building, and took exclusive occupancy of it, and that that possession *82 has been ever since maintained uninterruptedly by successive purchasers, including defendant.
Upon this state of the proof the plaintiff requested the court to charge the jury that ‘ ‘ An offer to purchase by the adverse claimant during and within the period of twenty-one years before this suit was brought, the land claimed adversely in the' suit, would rebut the presumption of title gained by twenty-one years’ adverse possession.” Also “Any acknowledgment by the claimant, made within the period of twenty-one years, that the title was in another, or .that the claimant did not own the land, the statute of limitations would not run. ’ ’
But the court refused to give either proposition, and, in lieu thereof, charged as follows : “An offer to purchase by the adverse claimant during and within the period of twenty-one years before this suit was brought, the land claimed adversely in the suit, would be evidence bearing upon the question whether or not she held the property adversely, and should be considered by you in the easeor; if there is any other evidence as to what the defendant said or did in regard to where the south line of the McAllister property was, this should be considered as bearing upon her claim of adverse possession and ownership of the property in question. Or, if she made any acknowledgment in regard to how she was in possession of the property, it should be taken by you.” The refusal to give the requests, and the giving of the instruction above quoted, the circuit court held to be error.
Recurring to tne statute, we find, as to the limit this: “An action for the recovery of the title or possession of real property, can only be brought *83 within twenty-one years after the cause of such action accrues, ’ ’ and, as to the requisites of • a cause of action, these elements: that plaintiff has a legal estate, and is entitled to possession, and that the defendant unlawfully keeps him out. The question, therefore, is: Was the action begun in time? In other words, did the statute begin to run twenty-one years before the action was commenced, and if it did, were the acts and declarations charged sufficient to arrest its course? Did either of the essentials cease to exist? ' That the statute began to run more than twenty-one years before suit is not open to dispute. There is no question as to the original seizure. It was a disseisin, judged by all the definitions in the books. Nor is there question that the occupancy has been actual, open, exclusive, and continuous from that-day to this. Was it, during all that time, adverse? The claim is that it ceased to be adverse. This is based upon the proposition that the acts and declarations above recited destroyed the adversary character of the possession, and therefore tolled the statute.
The possession which may in time prove a full defense against the holder of the record title must be actual, open, exclusive, continuous, and adverse. The first four of these conditions, even if involved here, which they are not, have become so generally understood as not to require comment; the last'has been a source of extended and almost illimitable controversy. It is observed by the author of Smith’s Leading Cases in his notes to Taylor v. Horde, (1 Burr., 60), to be found at page 660 of Part II of that work, that: “The doctrine of adverse '•possession, until very lately constituted and perhaps still constitutes one of the least set- *84 tied, although most important heads of the English law,” and he quotes Lord Mansfield as saying in the principal case, referring to the general subject, that “thé more we read, unless we are very careful to distinguish, the more we shall be confounded.” It is understood that subsequent legislation, which will be referred to later on, has largely if not wholly relieved the confusion in England, but similar uncertainty seems to have prevailed in many of the states of this union, and the law in America on the subject has appeared to be as uncertain as it once was in the mother country. Our interest in the inquiry has led us to examine not only the authorities cited by counsel, but great numbers in addition; but it is not proposed here to try to harmonize the differing opinions and decisions, for it is not within the compass of the common mind to reconcile the irreconcilable.
The view taken by the circuit court in its holding, and here made in argument by the learned counsel for the defendant in error, is thought by them to be consonant with, and supported by the declarations of a number of text writers and decisions of not a few of our state courts. Support is found in the text of Tyler on Ejectment and Adverse Enjoyment. On page 921 it is observed: “ An offer to purchase land by a party of another is such a recognition of the title of the latter as will bar the defense of adverse possession. ’ ’ The citation, is to Jackson v. Britton, 4 Wend., 507, where the head note is that: ‘ ‘ An offer to purchase land by a party having the title, does not impair or affect his right. Such offer, however, by a party bars the defense of adverse possession.” The facts of the case, however, show that the negotiations were much broader than the *85 statement of the . head-note, and the case itself hardly supports the text.
Expressions in other text books, here and there, seem to give color to the proposition that the claimant’s mere declarations disclaiming title may arrest the statute. For instance, in 2 Wood on Limitations, p. 690, is found this language: “Second, the continuity of possession may also be broken by an acknowledgment by the occupant of the owner’s title before the statute runs in his favor. * * * The ground upon which these cases proceed is, that such an admission rebuts the allegation of adverse possession.” But the author observes later on that “a parol acknowledgment of title made while the statute is running must be such as to show that the occupant no longer intends to hold adversely, and must refer to the title set up by the occupant.” And cases in Pennsylvania, cited in support of the text, hold that declarations, after the statute begins to run, must show an intent to attorn to another in order to toll the statute. As in Bank v. Wilson, 10 Watts., 261: “An acknowledgment, such as will avoid the operation of the statute limiting the time within which an action may be brought for the recovery of land, must be made to the owner, or his agent known as such; must admit that the title of the claimant is good and must be accompanied by a strict agreement to leave the land or to continue as a tenant.” And the author adds, at p. 621,that “it is the fact of exclusive occupancy, using and enjoying the land as his own, in hostility to the true owner, for the full statutory period, which enables the occupant to question an absolute right to the land under these statutes. The motive of the occupant is not material, provided his occu *86 pancy is actual and exclusive, and after the manner of the owner of the fee.”
Mr. Buswell, in his work on Limitations and Adverse Possession, at p. 337, says: “Declarations of the party in possession that he holds in subordination to the legal title are always admissible as being admissions against the interest of the party.” And at p. 311: “So long as the possessor declares that he holds in subordination to the better title, his possession will be regarded as being by consent; nor will a continued possession after such declaration avail to mature the title under the statute of limitations until the party has changed the character of his possession, either by express declarations or by the exercise of acts of ownership inconsistent with a less claim.” But at page 315, the author remarks that: “It is believed that whenever - a private person knows that another claims, and is in the actual enjoyment, of land which belongs to him and neglects to prosecute his right at law during the period of limitation, there being nothing to prevent his so doing, he will at the expiration of such period be barred of his remedy by the statute of limitations.” Citing Drayton v. Marshall, 1 Rice Eq., 373, where it is held: “It is believed that no case can be put, in which a man knows that another claims and is in enjoyment of what belongs to him, and neglects to prosecute his claim at law, where there is nothing to prevent his doing so, that he will not be barred by the statute. ’ ’
In Angelí on Limitations, page 389, it is observed: “So long, for instance, as the possessor declares that he holds in subordination to the better title, the possession will be regarded as held by consent; nor will a continued possession, after *87 such declarations, avail to mature a title under the statute of limitations, until the party has changed the character of his possession, either by express declarations, or by the exercise of acts of ownership inconsistent with a subordinate character,” citing a number of authorities. But at page 385, the author gives the precise rule which is quoted above as held in Drayton v. Marshall, and cites that case in its support. Taking the text and authorities cited together, it seems fair to assume that this author understands that in order to stamp a holding which appears on its face to be adversary, as otherwise, the declaration must go so far as to show that the holding is in subordination to a better title, and as a holding by consent of the owner of that title.
Innumerable instances might be given of like diversity of view, but we forbear. Enough has, we think, been shown to disclose the uncertain condition of legal thought on the subject. It remains to ascertain, if we may, what should be declared as the law of Ohio on the points involved. It must be kept in mind as a prominent, controlling idea, that the statute of limitations is now a statute of repose. Its purpose is the peace of society. Any construction, therefore, which contradicts the letter of the statute, should be carefully scrutinized, and, even though supported by some of the older decisions, those rendered at a time when the statute was regarded as one of presumptions, should be rejected if it tends to destroy or unduly qualify this admitted purpose. We look in vain' in the statute for support to the claim that its apparent import may be defeated by acts and declarations such as the requests to charge suppose. In addition to the section quoted, the stat *88 ute limits the time for the commencement of actions upon specialties, and upon contracts in •writing; actions upon contracts not in writing; actions where the right is created by statute; actions for trespass and for recovery of personal property; actions for torts; actions on official and other bonds, and other actions not definitely provided for. In respect to each one of these actions no saving is made, except as to persons under certain defined disabilities, affecting condition or knowledge, and no reservation interfering with the running of the statute is made save that in case of demands founded on contract an action may be brought within the time limited where there is an acknowledgment or promise to pay, but that must be in writing signed by the party to be charged, and does not revive the old action, but the old promise is treated as a consideration for the new, and it is upon the new promise that the action must be brought. No other provision concerning the effect of acknowledgment is made. This omission is justly regarded as indicating a purpose to exclude exceptions to the statute not embraced in its terms. It must be borne in mind, too, that the statute is part of the code, that it is to be liberally construed in order to promote its object, and that the rule of the common law that statutes in derogation thereof must be strictly construed, has no application to it. Section 4948, Revised Statutes.
The tendency of courts at the present day is to enforce the statute as they find it. One expression of this tendency is the rule, now well settled, that at law, where the statute has once begun to run, its course will not be impeded, nor its operation suspended by any subsequent disa *89 bility. As held in Thorpe v. Corwin, 20 N. J. L., 311: “The statute of limitations makes the lapse of time, a positive and legal bar, in all cases within its provisions.” And in Chevallier v. Durst, 6 Tex., 239: “The protections and disabilities contained in the statute of limitations do not apply to cases arising after the statute has begun to run, except in cases expressly provided for by the statute.” And, generally, it may be stated as the accepted doctrine that courts are without power to interpose barriers to the running of the statute save in exceptional instances where well established rules of equity require such interposition.
We come now to a more careful consideration of the terms of the requests. The first is that an offer to purchase of the adverse claimant tolls the statute. It is conceded by the authorities that one in possession under a claim of title may offer to purchase without prejudice to that title. In this state color of title is not necessary to adverse possession. It is said that the offer to buy is an acknowledgment that the other has the legal title, and that such acknowledgment is fatal to the claim of adverse possession. But is it? Can a man not desire to buy his peace as reasonably if he knows he has no title as if he has title, or believes he has? Since it is not necessary that the holding be under claim of title how- can it be of consequence that there is no denial, but in fact is an admission, of the opposing title? Nor is it necessary that a party should proclaim his purpose in making an offer to buy. He is not required to say he proposes to-buy his peace in order to give such effect to his act.
*90 But, even though an offer to buy is an acknowledgment (for the second request embraces that), how does that destroy the adverse character of the possession ? Whatever he acknowledges, whatever he says by way of acknowledgment, he still holds on to the possession, and it is the possession which, if unlawful, wrongs the other, and not the motive nor the belief of the possessor. It cannot help the case any that the- intruder admits the illegal character of his intrusion. By such a simple acknowledgment he neither says nor intimates that he will give up possession, nor that he will hold subject to the other, nor in recognition of his title. The opposite view results in magnifyingthestate of mind of the party, and dwarfing his acts. Its adoption would, as we think, work an unwarranted interference with the beneficent operation of a statute intended to secure repose to titles and peace to neighborhoods. In the language of Hosmer, C. J., in French v. Pearce, 8 Conn., 439: “The possession alone, and the qualities immediately attached to it, are regarded. No intimation is there as to the motive of the possessor. If he intends a wrongful disseisin, his actual possession for fifteen years, gives him a title; or if he occupies what he believes to be his own, a similar possession gives him a title. Into the recesses of his mind, his motives or purposes, his guilt or innocence, no inquiry is made. It is for this obvious reason; that it is the visible and adverse possession, with an intention to possess, that constitutes its adverse character, and not the remote views or belief of the possessor.” To which may be added this comment of Ingersoll, J., in Bryan v. Atwater, 5 Day., 181: “If I take a deed of my neighbor’s land from one who has no title and whom I know not to have a title, and in *91 virtue of such deed go into possession, and take the rents and profits, do I not, by this act, disseize my neighbor ? Will it avail me to say I have no title and I also know that my neighbor has a title? Does this acknowledgment and recognition of my neighbor’s title soften this illegal act of mine? Does it make the entry as it were lawful when otherwise it would have been tortious ? The answer to these questions is plain and obvious. The very act of the entry and possession makes me a disseizor; and if I so remain on the property for the space of fifteen years, I shall, thereby] gain a title to it.”
A case which we think in point is that of Yetzer v. Thoman, 17 Ohio St., 130. The holding is that “where one of two proprietors, respectively, of adjoining lands holds actual, continuous, notorious and exclusive pos session up to a certain'line, though not originally the true one, for the full period of twenty-one years, the statute of limitations applies in his favor and against the adjoining proprietor, although such possession may have grown out of mutual mistake of the parties respectively, in respect to the locality of what was originally the true line between them.” The trial judge had charged that “An entry of one man on the land of another is an ouster of the legal possession, or not, according to the intention with which it is done. By the law, the intention guides the entry and fixes its character; so that if the land' in dispute in this case was taken by the plaintiff and held by him for twenty-one years, under the belief that the line up to which he claimed was the true line, and the owner of the Thoman tract, in ignorance of the true line, but believing it to be the same which plaintiff occupied, allowed the plaintiff to take pos *92 session of the land in dispute and hold it, such occupancy by the mutual mistake of the parties cannot operate as a disseizin of the defendant, nor confer upon the plaintiff a title by adverse possession while such mutual mistake exists. ” The court, Brinkerhoff, J., commenting on this charge, remarks: “We are of opinion that this charge is erroneous. We think that under our statutes of limitation, if a party establish in himself, or in connection with those under whom he claims, an actual, notorious, continuous and exclusive possession of land for a period of twenty-one years, he thereby, except as to persons under disability, acquires a title to the land; and this, irrespective of any question of motive or mistake. The charge of the court below would seem to imply that the statute for the limitation of actions for the recovery of real estate was intended only for the protection of parties who appropriate to themselves the lands of others, knowing them to be the lands of others ; and to exclude from its benefits a party who has honestly entered and held possession of land in the full belief that it was his own, At least the charge will bear that construction, and was calculated to mislead the jury. Such a construction of our statute finds no countenance in any reported case in this state, and if accepted would, we think, be mischievous in its operation.” The learned judge also quotes with approval the paragraph hereinbefore given from the opinion in 8 Conn., at page 443. The holding is consistent with the rule given in Bobo v. Richmond, 25 Ohio St., 115, and is not inconsistent with any reported case in
Moreover, the claim in support of the requests, loses sight of the ability of the holder of the title to protect his interests and of .his duty to use *93 diligence in that respect. It ignores the peremptory inhibition of the statute: “Civil actions can only be commenced within the periods provided in this chapter, after the cause of action accrues,” and: “An action for the recovery of the title or possession of real property, can only be brought within twenty-one years after the cause of such action accrues.” It subordinates the plain letter of positive law to a fanciful effect of motive, or belief, on the part of the adverse claimant. It unreasonably exempts the party from the immediate consequence of his own negligence; it relieves him from a dilemma, the result of sleeping on his rights, in the face of that rule of universal application, whereby the law intends to reward the diligent, not the slothful.
We are of opinion that the principle announced in Dayton v. Marshall, supra, is a just one, that it is applicable to the facts of this ease, and that the rule should be that where it is shown that the original seizure was a disseisin, no subsequent act or declaration of the claimant should be held to toll the statute which does not deprive the holder of the title of his right to prosecute his action to recover possession, or suspend the same. This is a simple, easily understood test, and we believe is not only within the letter, but clearly within the spirit, of the statute. Applying this rule to the case at bar it is clear that neither the mere offer to buy, nor the acknowledgment of the claimant that the title was in another, or that he did not own the land, is sufficient to suspend the running of the statute. Such acts and declarations raise no conclusive implication that the claimant intends to attorn to the holder of the title, or yield the possession.
*94 A clear distinction is manifest between the case at bar and Lane v. Kennedy, 13 Ohio St., 42, where the original seizure (a partial encroachment on the highway), was held not to be adverse to the public nor inconsistent with its easement.
It is not intended to hold that a party may not,' by his conduct, estop himself from setting up the statute. Such a case is Treasurer v. Martin, 50 Ohio St., 197, where it is held that where one had procured the issue and continuance of an injunction wrongfully .until his adversary’s claim had been barred, he could not be permitted to plead the statute. But there the unfounded.injunction had suspended the right of action; here neither of the acts charged, nor all together, could affect the right of the true owner to commence his action. Another case, illustrative of the proposition, is Dietrick v. Noel, 42 Ohio St., 18.
This conclusion is in consonance with the present law of England, on the subject. It' is remarked by Mr. Browne in his Actions at Law, page 31, that: “ The object of the late statute 3 and 4 Will, 4 e. 27, appears to have been to alter this state of things, and to render any possession adverse (where the party claiming has a present right of possession and is not under disability), unless, first, there be a payment of rent, or second, an acknowledgment in writing; and this object has been fully carried out as that statute has been held to have entirely gotten rid of the doctrine of non-adverse possession. He cites Doe v. Branson, 4 N. & M., 664; Doe v. Gregory, 2 Ad. & Ell., 14; Doe v. Bramstan, 3 Ad. & Ell., 63; Nepean v. Knight, 2 M. & W., 894; and Doe v. Long, 9 C. & P., 773.
The circuit court found error in a negative answer given by the trial judge to a question put by *95 the jury after retirement, with respect to whether reference to a lease contained in a deed made to one of defendant’s predecessors in title, was evidence that a lease was in force at the time the deed was made. A diligent search of the record does not disclose that the lease referred to was at all material to the title, or claim, of either party, in which situation the answer would be, as we think it was, immaterial.
The' answer of the court to the jury.’s second question is objected to. The inquiry raised the same point involved in the first of the two requests to charge already considered, and the reply given the jury embraced the identical principle covered by the charge given which is heretofore fully considered.
Objections to the exclusion of evidence at the trial and other exceptions to the ruling of the common pleas, taken during the trial, are argued. We have given attention to all of them but do not find any well taken.
Another principle of law which seems to have been overlooked by the circuit court, as well as by the counsel, is determinative of the case. It is settled in this state that in a case where the issues are such that a finding of either in favor of the successful party entitles him to the judgment rendered, the judgment should not be reversed for error in the instructions to the jury relating exclusively to the other issue. Butler v. Kneeland, 23 Ohio St., 196; Sites v. Haverstick, same vol., 626. In the case at bar the pleadings presented two issues: One as to the title of the plaintiff, and the other as the statute of limitations. Either one properly found against the plaintiff was fatal to a recovery. The verdict is a finding of the issues *96 in favor of the defendant. This means all the issues. The error in the record found by the circuit court, as we understand the record, related wholly to the defense of. the statute of limitations. As the other issue was found for the defendant the proper judgment, even conceding that the common pleas did err in the particulars named, would have been one of affirmance.
The conclusions reached require a judgment of reversal of the circuit court and of affirmance of the common pleas, and it will be so ordered.

Reversed,