## CONSTRUCTION OF DEED WITH REFERENCE TO IDENTITY OF LAND.

Circuit Court of Cuyahoga County.

THE CLEVELAND CO-OPERATIVE STOVE COMPANY v. THE CLEVELAND & PITTSBURGH RAILROAD COMPANY.

Decided, December 16, 1912.

*Deeds—How Construed—Identity of Land Sought to be Described is a Question for a Jury—How Title Acquired by Adverse Possession.*

1. A deed should be construed according to the intention of the parties, and if its language is clear and unambiguous and does not require construction, the court will look only to the deed to ascertain the intention of the parties; but in case of doubt, the court may and should consider not only the language, but also the circumstances surrounding the transaction and the situation of the parties.

2. Where, in an action of ejectment from a strip of land ten feet wide adjoining a railroad right-of-way, it appears that the owners of a parcel of land, which was subject to a forty foot right-of-way allotted it, but the plat filed with the county recorder, through an error, described the right-of-way as sixty feet instead of forty, while deeds for lots sold recited that all lots are situated on the west line of the railroad right-of-way, the question of whether or not the grantors intended to include the ten feet when they deeded the lots is one for the jury.

3. Where one remains in actual, visible, exclusive, hostile and continuous possession of land for a period of twenty-one years, he thereby acquires title to the land.

*Henderson, Quail & Siddall,* for plaintiff in error.
*Squire, Sanders & Dempsey,* contra.

MEALS, J.; WINCH, J., and MARVIN, J., concur.

This is an action by the Cleveland & Pittsburgh Railroad Company against the Cleveland Co-Operative Stove Company, to recover the possession of a ten foot strip of land abutting upon and parallelling its right-of-way on the westerly side thereof at or near its intersection with Central avenue, in this city.

In 1852 the railroad company owned a tract of land, including the strip in dispute, consisting of 8.78 acres. On February 23, 1852, it conveyed the entire tract to William V. Craw, save and except a forty foot strip on the easterly side thereof, which it reserved as a right-of-way.

The tract so conveyed remained intact until 1870, when William V. Craw caused it to be alloted and a plat thereof to be made and recorded. The plat, however, shows the railroad company's right-of-way to be sixty feet in width instead of forty feet, as reserved in its deed to Craw. This was doubtless due to a mistake of the surveyor, for obviously it was Craw's intention to allot his entire interest in the tract, and from anything that appears upon the record, he lived and died supposing that this had been done.

The certificate attached to the plat contained the following language:

"This sheet contains an allotment made at the request of William V. Craw, of the south part of original lot Number 335, in East Cleveland, and bounded as follows:

"South by Quincy avenue, formerly Wade avenue, west by the east line of the Wilson Heirs' lands; and northeast by the Cleveland and Pittsburgh Railroad grounds."

This certificate also recites that Craw avenue (a street showing on the plat) is fifty feet in width and extends from Quincy street to the Cleveland & Pittsburgh Railroad Company.

On April 10, 1876, William V. Craw deeded the entire tract to James M. Craw, the land being described by metes and bounds as in the original deed from the railroad company, and with the same reservation. The deed recited that the above land has been subdivided into lots, and referred to the recorded plat. It also provided that the grantees should "fulfill all contracts heretofore made by the said William V. Craw, and to deed the same in pursuance of contracts heretofore made by said grantor for lots in such subdivision to parties holding said contracts."

By this deed William V. Craw doubtless intended to and did convey his entire interest in the tract.

On the same day on which he received the deed from William V. Craw, James M. Craw conveyed the property to Margaret W. Craw, wife of William V. Craw, using the same description and making the same reservation that was contained in the deed to him.

On February 3, 1879, Margaret W. Craw and William V. Craw, her husband, conveyed sublots numbers 1, 2, 3 and 4 of the Craw allotment to Lutz and Seelig, whose heirs and representatives, on May 17, 1881, conveyed the same to the Cleveland Co-Operative Stove Company. The description contained in the deed to the stove company was the same as that in the deed to Lutz and Seelig.

What land did the parties intend should be conveyed by the deed of Margaret W. Craw and her husband, William V. Craw, to Lutz and Seelig?

Margaret W. Craw owned to the railroad right-of-way. She might have limited the conveyance to the lands described by the plat, referred to in her deed, and reserved the ten-foot strip lying between the lots conveyed by her deed and the railroad right-of-way, and clearly this would have been the effect of the deed had she been content to describe the lots by a reference to the plat only.

A deed, for a description of lands conveyed, may refer to another deed, or to a map, or to a plat, and the deed or map or plat to which reference is thus made, will be considered as incorporated in the deed itself. *Develin on Real Estate*, Section 1020.

This was the situation in the case of *The Cleveland & Pittsburgh Railroad Company* v. *The National Safe & Lock Company*, decided by this court in December, 1910, and from which this case is readily distinguishable.

On the other hand, Margaret W. Craw might have conveyed, by the same deed or a separate instrument, the lots as described by the plat, and also the ten foot strip in dispute between them and the railroad's right-of-way, for she had the undoubted title to both.

What, then, was the intention of the parties to the transaction? The description contained in the deed to Lutz and Seelig,

referred to the plat for a description of the property and in addition recited that said "lots Numbers 1, 2, 3 and 4 are situated on the west line of Craw avenue and the Cleveland & Pittsburgh Railroad." Three of the lots had no outlet except upon the railroad and the fourth had only a few feet of frontage on Craw avenue.

Lutz and Seelig owned and occupied, in carrying on a coal business, original city lots Numbers 218 and 219, immediately in front of sub-lots 1, 2, 3 and 4. It is easily conceivable that their purpose in purchasing these lots was to obtain a railroad outlet. The deed to them also contained this clause:

"This deed is made in pursuance of an agreement made by William V. Craw and said Lutz and Seelig, and the possession given them (Lutz and Seelig) on the 1st day of April, 1873."

Thus Margaret W. Craw was performing an agreement in respect of the lots, between William V. Craw and Lutz and Seelig, which, by the deed from William V. Craw to James M. Craw, and in turn by James M. Craw to her, she agreed to perform.

On May 17, 1881, the heirs and representatives of Lutz and Seelig deceased, conveyed said lots numbers 218 and 219 and sub-lots numbers 1, 2, 3 and 4 to the Cleveland Co-Operative Stove Company which company has ever since used the land in carrying on its business, including the ten foot strip in dispute, on which, or the greater part of which, it has piled and stored ashes, cinders, slag and moulding flasks.

From 1873, when Lutz and Seelig acquired possession of sub-lots 1, 2, 3 and 4 until the date of the deed to the stove company, they and their heirs and representatives assumed and held possession of, and exercised control and dominion over the ten foot strip in dispute, and nobody arose to question their right so to do. A fence was built and maintained on the westerly line of the railroad's right-of-way, which with other fences, enclosed said strip as a part of their land, and by common consent Lutz and Seelig were the accredited owners not only of Lots Numbers 1, 2, 3 and 4, but the ten foot strip contiguous thereto. In fact, nobody distinguished between the two; all was regarded as theirs.

In 1900 somebody discovered the mistake which had been

made in platting the property, whereupon on April 18, 1900, J. Odell procured a quit-claim deed of the ten foot strip in dispute from Margaret W. Craw, widow of William V. Craw, deceased, and on November 9, 1900, by quit-claim deed, conveyed the same to the railroad company. It is on this deed that the railroad company rests its claim to the property.

In this situation the court instructed the jury that the record title to the property was in the railroad company, and submitted the stove company's claim to the title to said strip by adverse possession, to the jury, who found that the right to the possession of the property was in the railroad company.

Counsel for the stove company contend that both the court and the jury erred, the court in instructing the jury that the record title was in the railroad company, and the jury in finding that the stove company had not acquired title to the disputed strip by adverse possession. We believe both contentions to be well founded.

In our opinion, the court erred in finding from these facts as a matter of law, and so instructing the jury, that the record title was in the railroad company. In arriving at this conclusion the court must have found, as a matter of law, that the reference to the plat in the description contained in the deed of Margaret W. Craw and William V. Craw, her husband, to Lutz and Seelig, was conclusive. This conclusion might have been tenable had the description in the deed referred only to the plat, and had the lots been described only by their numbers as they appeared upon the plat; but this was not the case. The certificate attached to the plat certified that the alloted land was bounded on the northeast by the Cleveland & Pittsburgh Railroad, and here sub-lots Numbers 1, 2, 3 and 4 are situated, and the deed of Margaret W. Craw and William V. Craw to Lutz and Seelig recited that "said sub-lots 1, 2, 3 and 4 are situated on the west line of Craw avenue and the Cleveland & Pittsburgh Railroad." They doubtless owned to the railroad, and might have conveyed all their interest in the land up to the railroad right-of-way.

What, then, was the intention of the parties? What land was intended to be conveyed by the deed to Lutz and Seelig?

A deed should be construed according to the intention of the parties, and if its language is clear and unambiguous, and does not require a construction, the court will look only to the deed to ascertain the intention of the parties; but in case of doubt, the court may and should consider not only the language, but also the circumstances surrounding the transaction and the situation of the parties.    *Develin on Real Estate,* Section 839.

In *Beardsley* v. *Nashville,* 64 Ark., 243, it is said:

"A deed is to be construed according to the intention of the parties, as manifested by the entire instrument, although such construction may not comport with the language of a particular part of it.    When a deed contains two descriptions of the land conveyed which are not consistent with each other, that description must control which best expresses the intention of the parties, as manifested by the whole instrument and the surrounding circumstances."

In *Snook* v. *Wingifeld,* 52 W. Va., 446, the court quoted approvingly from *Jones on Real Property,* Section 339:

"The construction of the terms used in a deed, aside from extrinsic evidence, is for the court.    The question of the application of a description to its proper subject-matter is for the jury, who may have the aid of all competent extrinsic evidence.    The question of the identity of the location is always one of fact for the jury."

Again, in the same opinion, the court say:

"Parol evidence is admissible to apply the description to the parcel intended to be conveyed.    When the terms used in the deed leave it uncertain what property was intended to be embraced in it, such evidence can not be used to enlarge the scope of the descriptive words, but only to fit them to the lands intended to be described."

In *Sharp* v. *Thompson,* 100 Ill., 467, it is said:

"The mortgage under consideration described the several lots conveyed by number, with the additional clause 'being all of Block 25.'    Block 25 did not contain the lots mentioned in the deed, but they were in another block.    It appearing, however, that it was the intention of the mortgagor to mortgage the block in which he resided, and that he resided in Block 25, it was held

that Block 25 was, and the lots named were not subject to the mortgage.''

In *Park Commissioners* v. *Taylor*, 133 Ia., 453, it is said:

''Where a conveyance describes certain lots with reference to a plat, then the plat, for the purpose of the description, becomes part of the conveyance, and where the plat describes the lots as extending to a navigable stream, such stream constitutes an identified monument which will control the distance indicated by the figures of the plat and the owner takes the land to high water mark.''

Where the meaning of the description contained in a deed is doubtful, evidence as to the acts of the parties may be admitted to show the intent, and generally in the construction of every doubtful and ambiguous deed, the intent can not be obtained by the application of one rule alone; all should be considered and to each should be given the proper weight. *2 Develin on Real Estate*, Section 840.

In *Salsbury* v. *Andrews*, 19 Pickering, 250, the language of Mr. Chief Justice Shaw is peculiarly pertinent as illustrating the manner to be adopted in arriving at the intent of the parties:

''The same individual owning two tenements adjoining, may carve out and sell any portion that he pleases, and the terms of the grant, as they can be learned, either by words clearly expressed, or by just and sound construction, will regulate and measure the rights of the grantee. In construing the words of such a grant, where the wording is doubtful or ambiguous, several rules are applicable, all however designed to aid in ascertaining what was the intent of the parties, such intent, when ascertained being the governing principle of construction.

''And first, as the language of the deed is the language of the grantor, the rule is that all doubtful words shall be construed most strongly against the grantor, and most favorably and beneficially for the grantee. Again, every provision, clause and word in the same instrument shall be taken into consideration in ascertaining the meaning of the parties, whether words of grant, of covenant or description, or words of qualification, restraint, exception or explanation. Again, every word shall be

presumed to have been used for some purpose, and shall be deemed to have some force and effect, if it can have. And further, although parol evidence is not admissible to prove that the parties intended something different from that which the written language expresses, or which may be the legal inference and conclusion to be drawn from it, yet it is always competent to give in evidence existing circumstances, such as the actual condition and situation of the land, buildings, passages, water-courses, and other local objects, in order to give a definite meaning to language used in the deed, and to show the sense in which particular words were properly used by the parties, especially in matters of description."

Therefore, under the facts of this case as disclosed by the record, we think the court should have submitted the question of the application of the description contained in the deed of Margaret W. and William V. Craw to Lutz and Seelig, and from them to the stove company, to its proper subject-matter, to the jury. Not to have done so, we think was error.

Now briefly, on the question of whether or not under the facts disclosed by the record, to some of which attention has been called, the stove company acquired title to the disputed strip by what is known in the law as adverse possession.

From May 17, 1881, until January 20, 1903, when this action was brought, the stove company, without let or hindrance of anybody, occupied and used the strip in conjunction with sublots Numbers 1, 2, 3 and 4, to store ashes, cinders, slag and moulding flasks. During all of this time the land was enclosed by fences. Nobody attempted to interfere with or interrupt the stove company's possession of the land and during all of these years its possession was actual, visible, exclusive, hostile and continuous.

In *Yetzer* v. *Thomen,* 17 O. S., 130, the court said:

"We think that under our statute of limitations, if a party establish in himself or in connection with those under whom he claims an actual, notorious, continuous and exclusive possession of land for a period of twenty-one years, he thereby, except as to persons under disability, acquires a title to the land; and this is irrespective of any question of motive or mistake."

Later in the opinion the court further said:

"It seems to us that the correct doctrine on this subject is laid down by the Supreme Court of Errors of Connecticut, in *French* v. *Pierce,* 8 Conn., 439, and except that the period of limitation prescribed by the statute of that state is fifteen years instead of twenty-one, as in Ohio, what was said in that case is as applicable in cases arising under our statute as it was to the case before that court. In that case the court says: 'The possession alone, and the qualities immediately attached to it, are regarded. If he intends a wrongful disseizin, his actual possession for fifteen years gives him a title; or if he occupies what he believes to be his own, a similar possession gives him title. Into the recesses of his mind, his motives or purposes, his guilt or innocence, no inquiry is made. It is for this obvious reason that it is the visible and adverse possession, with an intention to possess, that constitutes its adverse character, and not the remote views or belief of the possessor.' "

In *McAllister* v. *Hartzel,* 60 O. S., 69, this doctrine is affirmed, and in that case the court announced the further rule that "Where the statute of limitations is interposed in an action of ejectment, and it is shown that the original seizure was a disseizin, any subsequent act or declaration of the claimant, or his predecessor in title which does not estop the claimant to plead the statute, nor suspend the right of the holder of the title to prosecute an action to recover possession, will not be sufficient to arrest the running of the statute. Neither a mere offer to buy within the twenty-one years, nor an acknowledgment by the claimant within that time that the title is in another, or that the claimant does not own the land, will have that effect."

Reference is made to this rule for the reason that the railroad company offered in evidence at the trial a contract between it and the stove company, made March 25, 1901, for the building of a switch from the railroad company's tracks into and upon the stove company's land, by the terms of which each was to bear the expense of building on its own land. In the plat, which was prepared by the railroad company and approved by the stove company, the ten foot strip was included in the railroad company's land, and this fact was apparently overlooked by the

stove company and was not called to its attention.

By the act of giving its approval to this plat, the railroad company claims that the stove company relinquished whatever right or claim which it had to the title to the land by adverse possession. In the light of the above doctrine, however, we are unable to see the logic of this contention.

Without further reviewing the facts as disclosed by the record, we are of the opinion that the claim of the stove company to title to the disputed strip by adverse possession, regardless of the state of the record title, was clearly established, and that the verdict of the jury to the contrary was against the weight of the evidence.

Accordingly the judgment of the court of common pleas is reversed and the cause remanded for further proceedings according to law.