### RICHARD S. BRYAN and ISAAC BRYAN *against* DAVID ATWATER.

MOTION for a new trial.

*A.* died seised of certain lands, in fee, leaving four minor heirs, and his widow; afterwards, during the minority

This was an action of disseisin, brought to recover an undivided moiety of a certain piece of land in *Milford.* The cause was tried before the Superior Court. It was agreed, on the trial, that *Joseph Bryan,* the father of the plaintiffs, of several of the heirs, *B.* entered upon the same lands, and continued in the possession thereof, for more than fifteen years, and more than five years after all the heirs had arrived at full age, holding out all persons therefrom, and taking the whole rents and profits to himself; at the time when *B* so entered into possession, he entered into a contract with the widow of *A.* who was also, the administratrix of the estate of *A.* for the purchase of the same lands; whereupon, she executed a bond to *B.,* conditioned, that the heirs of *A.,* within a reasonable time after they should arrive at full age, should convey their interest in the lands, to *B.,* and that she should likewise convey to him, her right of dower; the price agreed for the land, was paid; subsequently, two of the heirs of *A.* conveyed their interest in the land, to *B.;* and after the expiration of the fifteen years' possession, *B.* demanded of the obligor, the fulfilment of the condition of her bond; held, that the possession of *B.* was an adverse possession, and vested in him the legal title to the lands.

was well seised of the demanded premises, at the time of his death, which happened prior to the 19th day of *September*, 1783 ; that at his death, he left four children and heirs at law, to wit, *Joseph, Juliana, Richard S.* and *Isaac ;* and also *Juliana,* his widow ; that the eldest child, *Joseph,* was born on the 28th day of *November,* 1769, and that the youngest child, *Isaac,* one of the plaintiffs, was born on the 27th day of *April,* 1780. The plaintiffs derived their title from their father, *Joseph Bryan,* deceased, by right of inheritance ; and the defendant claimed title, by virtue of an adverse possession of more than fifteen years.

It was proved, on the trial, that on the 24th of *January,* 1793, *William Atwater,* the father of the defendant, under whom the defendant held, and one *Peter Butler,* entered into the possession of the premises ; that *Atwater* from that time, to the date of the plaintiffs' writ, which was issued on the 6th of *June,* 1810, had continued in the possession of the premises, holding out all others, and taking the whole rents and profits to himself; that within three years after the 24th of *January,* 1793, and prior to the year 1799, *William Atwater* erected on the premises, a valuable house and store, and continued, to occupy the same, exclusively, taking the whole rents and profits thereof to himself; and that since the 24th of *January,* 1793, no demand of rent for the use and occupation of the premises, had been made of him, and that he had not paid rent to any one, for such use and occupation ; that at the time of entering into the possession of the premises, *viz.* on the 24th of *January,* 1793, *Juliana Buckingham,* the widow of *Joseph Bryan,* deceased, and administratrix of his estate, together with *Gideon Buckingham,* then her husband, executed and delivered to *William Atwater,* the father of the defendant, and *Peter Butler,* a bond for a deed of the demanded premises ; to which, the following condition was annexed, *viz.* " The condition of the above obligation is such, that whereas the said *Juliana Buckingham* has this day bargained and sold to the above-said *William Atwater* and *Peter Butler,* for the consideration of one hundred and eighty pounds, a certain piece of land, lying in said *Milford,* near

the meeting-house, containing about one acre, more or less, bounded," &c. "together with the house, barn and other buildings thereon standing and being ; said premises are disposed of, for, and in behalf of the heirs of *Joseph Bryan*, deceased ; now, if said heirs, *viz. Joseph Bryan, Julia Bryan, Richard Smith Bryan*, and *Isaac Bryan*, shall, and will, in a reasonable time, after said *Isaac* shall arrive to the age of twenty-one years, execute and give to said *William Atwater* and *Peter Butler*, or to their heirs, a good warrantee deed of the foregoing premises ; and said *Juliana Buckingham* shall likewise quitclaim all her right of dower to the same ; then the foregoing deed to be null and void ; otherwise, and on failure of their giving and executing deeds, as aforesaid, said bond to be in full force and virtue," &c. It was also proved, that, on the execution and delivery of this bond, *Atwater* and *Butler* paid to *Juliana* and *Gideon Buckingham*, the price agreed for the land ; that on the 6th day of *October*, 1797, *Juliana Bryan* conveyed all her interest in the land, to *William Atwater* ; that on the first day of *September*, 1795, *Joseph Bryan*, son of *Joseph Bryan*, deceased, conveyed all his right to *William Atwater* and *Peter Butler* ; that *Butler*, on the 19th of *June*, 1797, conveyed all his right to the premises, to *William Atwater* ; that three days before the date of the plaintiffs' writ, they demanded of the defendant, the possession of the premises, and that at the same time, *William Atwater* demanded of *Juliana Buckingham*, the performance of the condition of her bond : and that no dower in the estate of *Joseph Bryan*, deceased, had ever been set out to his widow.

Upon these facts, the court charged the jury, that the only question was, whether the defendant had so possessed the demanded premises, as to vest in him, a legal title ; and that, under the circumstances of the case, the law was so, that the defendant had not acquired a title ; and, that their verdict must be for the plaintiffs. The jury returned a verdict for the plaintiffs, accordingly. The defendant moved for a new trial, on the ground of a misdirection ; which motion was reserved for the opinion of the nine Judges.

Nov. 1811.

BRYAN
*v.*
ATWATER.

*N. Smith* and *Denison*, in support of the motion.

The only question in this case is, whether the possession of the defendant, was an adverse possession? The general rule is, that a possession is adverse, *prima facie*, where the party in possession, has taken the rents and profits to himself. It is, then, incumbent on the other party, by some circumstances, to shew that the possession was not adverse. The only ground, on which it is claimed, that the possession was not adverse, is the agreement with *Buckingham*, and his wife. But the plaintiffs were not parties to this agreement. *Buckingham* and his wife had no power or authority to make this agreement; it could not, therefore, affect the rights of the plaintiffs.

We admit, for the purpose of argument, that if the heirs of *Joseph Bryan* had given a *license* to enter upon the premises, the possession would not be adverse: But the defendant had no license from them; no agreement with them. They were not in possession, even by construction. The relation of landlord and tenant did not subsist between the plaintiffs, or the heirs of *Bryan*, and the defendant.

But we contend, that if the original entry had been by virtue of a license from the proprietor; still, a subsequent adverse possession might exist, and a title be gained thereby. *Fisher* v. *Prosser*, *Cowp. Rep.* 217. *Trowbridge* v. *Royce*, 1 *Root's Rep.* 50. *Lane* v. *Coply*, 1 *Root's Rep.* 68. The acts of the defendant, in making improvements on the land, and paying rent to no one, shew, that he considered himself as holding adversely. Suppose a deed of land given to one, and he enters and holds possession for more than fifteen years; it then appears, that the deed was executed in the presence of but one witness; such a deed would be only an agreement to convey the land; still, the grantee would gain a title by an adverse possession. Suppose, also, that a mortgagee enters into the possession of mortgaged premises, and holds fifteen years, the mortgagor cannot redeem. The title of the mortgagee is complete. *Skinner* v. *Smith*, 1 *Day's Rep.* 124. The heirs of *Bryan* could not convey the land in question, to the defendant. They were out of pos-

session ; and their deed would be void under the statute against the selling of disputed titles.

It is said, that *William Atwater*, in 1797, took a quitclaim deed from two of the heirs of *Joseph Bryan.* This proves nothing more, than an acknowledgment, that his title needed fortifying. It was no evidence that he was not holding adversely. He might fortify his title by deeds from all the world.

It is claimed, also, that these deeds made the defendant, tenant in common with other heirs. This did not alter the nature of the possession, by *Atwater,* before. The parties have not treated each other as tenants in common ; nor have they conducted as such, in any respect whatever.

*R. M. Sherman* and *Staples,* contra.

The only question arising in this case, is, whether the title of the plaintiffs is defeated by the possession of the defendant ? It is admitted, that, for this purpose, the possession must have been adverse. The plaintiffs contend, that this possession was not of that character.

An adverse possession is, where the occupier holds the property in *defiance* of the title of the owner. Although he admits, in so many words, the title of the owner, yet, if he possesses in defiance of it, the admission is unavailing. In this respect, there is a distinction between a length of possession set up as a ground of *presumption,* or as a *bar under the statute.* An admission of title, would rebut a presumption, which, otherwise, might result from such possession ; but would not diminish its efficacy, as a *bar.*

But if the *intention* of the possessor, which is the only criterion, by which to ascertain, whether the possession be, or be not, adverse, is to yield to the title, by which the owner claims, whenever he shall demand his property ; then such possession is not adverse. Indeed, if his claim is, confessedly, subject to the same title, although he claims it to be in himself, still, his possession will not be adverse. As where, in case the younger son enters, claiming as heir to the father, and dies, and the land descends to his issue ;

Nov. 1811.

BRYAN
*v.*
ATWATER.

such possession and descent, will not *toll* the entry of the eldest son, as an adverse possession would ; for, although, the younger claimed against the elder, yet, he did not claim in defiance of that title, which the elder is found actually to have; namely, the father's title. So here, the defendant, by entering under the bond of *Gideon* and *Juliana Buckingham*, admitted the title, which such bond was to assure; although, the license was not derived from the plaintiffs themselves ; and even admitted that title to be in the plaintiffs. By accepting the deeds of two heirs, the defendant became tenant in common with the plaintiffs ; and after that, surely, being in possession by right, shall not be presumed to be being in tortiously, denying the owner's right. The acceptance of the deeds, was a fresh and unequivocal acknowledgment, by the tenant, that he did not hold in defiance of the title of the plaintiffs ; and that acknowledgment was repeated, when, three days before the suit, he demanded a fulfilment of the condition of the bond, of one of the obligors. The defendant, therefore, having had an adverse possession, the plaintiffs have a right to recover.

INGERSOLL, J. (After stating the case.) It is argued before this Court, against a new trial, by the counsel of the plaintiffs, that the charge given to the jury, was correct ; in fact, that there was no case to be left to the jury. They insisted, that to make a possession adverse, it was essentially requisite, that the holding of the property should be in opposition to the title of the true owner ; that not only, there should be no holding under him, but his title should be disclaimed and denied by the holder ; that in the case under consideration, there was no denial of the plaintiffs' title, but on the contrary, there was an express acknowledgment of it : That the bond for a deed, was evidence of this fact ; and was evidence, also, that the defendant and his father, *William Atwater*, held the premises under the plaintiffs : That the principle contended for, was proved, by the taking of the deeds from *Juliana Bryan* and *Joseph Bryan*, two of the heirs of *Joseph Bryan*, deceased, after their arrival at

the age of twenty-one years : That the demand of the fulfilment of the bond of *Juliana Buckingham*, the late wife and widow of the said deceased, *Joseph Bryan*, was confirmatory of the proposition, that there had been no adverse possession.

It is my opinion, however, that from the facts appearing in this case, there has been an adverse possession; and I think there ought to be a new trial of the cause.

In order to determine whether my opinion is correct, or not, it will be necessary to ascertain, precisely, the meaning of the terms *adverse holding*, or *adverse possession*. There had been, in fact, a possession of the premises by the defendant, and by his father, *William Atwater*, for more than fifteen years before the commencement of the action, and for more than five years after the youngest child of *Joseph Bryan*, deceased, attained full age. If this possession has been adverse, the case is with the defendant ; if otherwise, it is with the plaintiffs. I apprehend, it is not necessary to make a holding, or possession of lands, *adverse*, that it should be accompanied with a claim of title, on the part of the possessor, with a denial of title in the legal proprietor. Still, the holding cannot be adverse, if it be under the legal proprietor; that is, if the claim to the possession be derived from him. When, indeed, from the kind of possession, it is doubtful whether it be adverse, or not, and the fact rests in presumption, there being no direct proof, one way or the other, this presumption is a proper subject for the consideration of the jury ; and they ought to make such inference from the circumstances, as the nature of the case requires. If there be direct proof, that the possessor holds under the legal proprietor, or does not so hold, there is then no case to be left to the jury.

In the case of a tenant for life, or for years, during the continuance of the lease, there can be no question, as to the nature of the possession of such tenant. It cannot be adverse. There is no presumption in the case, to be considered by the jury. By the terms of the contract, the tenant has a right to the possession of the land; and this

contract appearing, the legal inference is direct, that such possession it not adverse. If, however, the lessee for years, holds over, after the expiration of his term, or if the tenant for the life of another, holds over, after the death of the *cestui que vie*, there may be let in a presumption, that such holding is adverse, or otherwise, as the case may be. If it be a mere holding over, unaccompained with any other acts, the more probable inference would be, in favour of a possession, not adverse. If, however, it has been of long standing, without accounting for the rents and profits, it may be evidence to the jury, of an adverse possession. Here, let it be remarked, that the possession of the lessee is, also, the possession of the lessor. The possession of the mortgagor is that of the mortgagee. In short, the possession of every one, who properly holds under the legal proprietor, is the possession of such proprietor.

The same principles are applicable, in case of tenants in common. The possession of one tenant in common, is the possession of his co-tenant, or co-tenants, whether there be more or less. But if one tenant in common, has been in possession a great number of years, without any accounting to his fellow commoners, this is proper evidence, from which the jury may infer an adverse possession. Such was the decision in the case of *Fisher* v. *Prosser, Cowp.* 217.

But more particularly; what, in point of law, is an adverse possession, without any reference to presumption, to make out such possession? It is a possession, not under the legal proprietor, but entered into without his consent, either directly or indirectly given. It is a possession, by which he is disseised and ousted of the lands so possessed. To make a disseisin, it is not necessary, that the disseisor should claim title to the lands taken by him. It is not necessary, that he should deny or disclaim the title of the legal proprietor. No; it is necessary only, that he should enter into, and take the possession of the lands, as if they were his own; to take the rents and profits, and so manage with the property, as the legal proprietor himself would manage with it. If property be so taken, and so used, by any one,

though he claims no title, but avows himself to be a wrong-doer, yet, by such act, the legal proprietor is disseised. Nay, if he acknowledges the title of the legal proprietor to be good, it makes no difference ; he is still a disseisor. In truth, to determine, whether or not, the possession be adverse, it is only necessary, to find out, whether it can be considered as the constructive possession of the legal proprietor. If it be, as has been before hinted, with his consent, express or implied, it is his possession, and not adverse. If it be without such consent, and against his will, it is adverse.

Again, whenever the legal proprietor can maintain an action for such entry and possession, without previously demanding the property, so entered upon and possessed, he is disseised and ousted, by the entry and possession of another. And, that he can maintain such an action, in every instance, where his lands are so occupied, without his license or consent, is clear beyond all doubt.

These being the general principles, with respect to an adverse possession, it is now to be considered, how they bear upon the case under consideration. It was said in the argument, that the taking a bond for a deed, was not only an acknowledgment of the title of the plaintiffs, but also, an acknowledgment, that *William Atwater* and *Peter Butler*, under whom the defendant claims, held under the plaintiffs. That the taking of the bond, was an acknowledgment of the title being in the plaintiffs, I agree. But, that it proves a holding under the plaintiffs, that is to say, a holding by their license or consent, I deny. Nay, it does not prove a holding under them, in any sense whatever ; inasmuch, as a holding under any one, is either a holding by his license or consent, or a claiming of title from him. *Atwater* and *Butler*, when they took possession, claimed no title from the plaintiffs ; and in this point of view, did not hold under them ; nor did they enter upon the premises, with the consent of the plaintiffs ; nor did they agree to account with them, for the rents and profits. They, indeed, knew, that they, themselves, had no title ; and that the plaintiffs had.

They purchased the premises from the mother of the plaintiffs, paying therefor, a full consideration, and trusting, that the plaintiffs, when they should arrive at full age, would give them a deed. In case of failure of a deed or deeds, recourse was intended to be had to the bond, for an indemnification. *William Atwater*, afterwards, purchased *Peter Butler's* part, and has erected valuable buildings on the premises. Indeed, ever since the purchase was made, the defendant, and those under whom he claims, have used the premises, exclusively, as their own, without accounting to any one, for the rents and profits. I cannot bring myself to doubt, but that such a holding, is an *adverse holding*, an *adverse possession*; in other words, that the plaintiffs were disseised by *William Atwater* and *Peter Butler*, at the time when they took possession; and that the disseisin has, ever since, been kept up. Could not the plaintiffs have treated *Atwater* and *Butler* as tort-feasors and disseisors, the moment they took possession of their property? There cannot be a question about this. If so, the consequence is clear, that the possession has ever been adverse. If I take a deed of my neighbour's land, from one who has no title, and whom, I know not to have a title, and in virtue of such deed, go into possession, and take the rents and profits; do I not, by this act, disseise my neighbour? Will it avail me, to say, I know I have no title, and I also know, that my neighbour has a title? Does this acknowledgment and recognition of my neighbour's title, soften this illegal act of mine? Does it make the entry, as it were, lawful, when otherwise, it would have been tortious? The answer to these questions, is plain and obvious. The very act of my entry and possession, makes me a disseisor; and if I so remain on the property, for the space of fifteen years, I shall, thereby, gain a title to it. Nor do the conveyances from the two heirs of *Joseph Bryan*, deceased, after they came of age, make any difference in the case.

It was argued, that after these conveyances, the defendant, and those under whom he claimed, became tenants in common of the demanded premises, with the plaintiffs; and that the principle that a mere perception of the profits, by one

tenant in common, not being an ouster of his co-tenant, or co-tenants, would apply, and prevent the possession from being adverse. This reasoning is specious, but rests on no solid foundation. It is true, as a general principle, that the possession of one tenant in common, is also the possession of his fellow commoner. As both have an equal right to the possession, the law presumes, that if one only enters, and takes the rents and profits, he does act, as well for his companion, as for himself. But this presumption may be rebutted, by the overt acts of the one so entering; by such acts as shew, that he means to hold exclusively for himself, without being accountable to any one. Apply this principle, then, to the case under consideration. After the above mentioned conveyances, *William Atwater* and *Peter Butler*, until *Butler's* conveyance to *Atwater*, were, and afterwards, *Atwater* alone, was, so far as respected the real right and title to the premises, tenants in common with the plaintiffs; in other words, the premises then belonged to those grantees and to the plaintiffs. And if, after thus gaining title to part of the property, the grantees had, for the first time, entered, and taken the rents and profits of the whole, this entry and taking of the profits, might not have constituted an adverse possession. But the facts were far otherwise. Before the first conveyance was made, they had tortiously entered upon, and possessed the property; and were, in this manner, possessing it, when the conveyance was made. Clear it is, that this conveyance could not alter the nature of their previous possession. If it had been tortious, it would remain so. It is also clear, that the part conveyed, must, as to the nature of the possession, be in *statu quo.* For, by taking a conveyance, there was no more than an acknowledgment of title in the heirs of *Joseph Bryan ;* which had always been done ; but there did not then commence any holding under the plaintiffs ; nor any claim of title from them ; nor any license or consent, that the grantees should be in possession. They still, as they had paid for the whole, intended to hold the whole as their own property.

Of as little avail is the argument, that *Atwater* and *Butler,*

by taking the bond from *Juliana Buckingham*, obtained her right of dower, and, thereby, became rightfully possessed of the property, as tenants in common with the plaintiffs and the other heirs. I do not recollect, that any argument was, in fact, offered against a new trial, on this ground. I mention it only, to shew, that a new trial ought to have been granted, even if this reason against it, had been urged, or suggested. True it is, that by having the right of dower engaged to them, they may have had a right to the possession of an undivided third part of the premises. But did they go into possession, claiming nothing more than this ? The fact is, they never took possession of it, as claiming right under the tenant in dower ; but as has been said, they having purchased the whole, intended to hold the whole. They never entered as tenants in common, never claimed as such, and never intended to claim as such. These, then, being their views, as it respects the plaintiffs, they were as complete tort-feasors, as they possibly could be.

But, as has been observed, no argument against a new trial, was drawn from the circumstance of having the right of dower engaged to them. Supposing, however, that by taking this bond, they became tenants in common with the plaintiffs, and were not tort-feasors, still, the charge was manifestly wrong, and the verdict equally so : Because, on this ground, the defendant would be entitled to an undivided third part of the moiety sued for ; and the verdict ought to have been for two-thirds only. But, at any rate, as to the possession being not adverse, on account of the right of dower, to make the best case of it for the plaintiffs, the act of going into possession, by *William Atwater* and *Peter Butler*, was an original act, to be explained by circumstances. The possession might, or might not, be adverse ; and, therefore, a proper matter for the consideration of the jury. But this is of minor importance.

I am of opinion, upon the whole case, that there was an adverse possession by the defendant, and by those under whom he claimed, for so long a time before the commencement of the action, as to bar all claim of the plaintiffs to the

demanded premises; and therefore, that the verdict ought to have been for the defendant; and on this ground, I would advise a new trial.

MITCHELL, Ch. J. REEVE, TRUMBULL, EDMOND, and SMITH, Js. concurred in this opinion.

SWIFT, BRAINARD, and BALDWIN, Js. dissented.

New trial to be granted.