This is an action in ejectment claiming title and possession to a piece of land described in paragraph 1 of the complaint, and located in the town of Windsor Locks. It is designated as "In Dispute" on a map, plaintiff's Exhibit A. It adjoins on its east line land admittedly owned and possessed by the defendant on South Center Street, and extends back on its north side 63 feet, and on its south side 60.65 feet. The whole piece, that is, the land disputed and undisputed, is bounded on its north, west and south sides by land of the plaintiff, and on its east line by the highway, South Center Street.
The plaintiff alleges that on or about June 12, 1937, the defendant wrongfully entered on said land marked "In Dispute" and dispossessed the plaintiff and still keeps him "out of possession, depriving him of the use, rents and profits."
The defendant defines the allegations of the complaint and then counterclaims setting forth her purchase of the whole piece of land by warrantee deed on June 1, 1932; that the parcel of land described in the plaintiff's complaint is a portion of the land conveyed to the defendant; and that on June 12, 1937, the plaintiff unlawfully entered on the defendant's land, that is the land "In Dispute", and has deprived her of the use, rents and profits of the same.
In other words, both actions sound in ejectment. But no matter what the nature of the complaint and counterclaim, counsel have agreed that the question to be determined is the true boundary line between the rear of the defendant's property and the adjoining property of the plaintiff.
The plaintiff's contention is: (1) That title to the piece marked "In Dispute" on plaintiff's Exhibit A, in the rear of what is admittedly the defendant's property, is in the plaintiff by adverse possession, the boundaries to the disputed piece having been acquiesced in by the defendant and her predecessors in title for a period of approximately 30 years, and the land in dispute having been in actual, visible, notorious, exclusive, continuous, and hostile possession of the plaintiff during all these years; (2) that the defendant could not have acquired title to the property "In Dispute" because her immediate grantor was out of possession at the time of conveyance on June 1, 1932; and (3) that the quantity of land described in the deed to the defendant, and also set forth in the deeds of the predecessors in title, is not controlling in view of *Page 22 
the fact that the land within the recognized monuments and boundaries contained a less quantity.
The defendant, of course, denies these propositions. The determination of a question of this nature requires a careful and detailed examination of all deeds relating to the property concerned. The deeds of the plaintiff in their descriptions do not help in determining the defendant's west boundary. Victor Norman at one time owned all the land including and immediately surrounding the defendant's property, having purchased it about 1905. In December, 1913, Mezzelel Champigny acquired title to what Victor Norman then owned of this property. He had prior to this conveyed part of his property to Joseph Masse, who in September, 1913, conveyed the same to Frank Malanson. Now on June 1, 1914, by conveyance of Mezzelel Champigny and on April 2, 1917, by a conveyance of Frank Malanson, the plaintiff secured title to the land adjoining the defendant's land on the north, west and south boundaries. These conveyances and those of their predecessors in title give no assistance to the Court in determining the west boundary of the defendant's land.
Now, in the defendant's chain of title we find that Victor Norman, the predecessor in title of the plaintiff, and the one who owned all the land involved, conveyed on August 29, 1907, a piece of land out of this whole tract which he owned, to Georgianna Champigny, describing it as follows: "North by land of Joseph Masse, east by Center Street, south and west by my own land, and containing one-half acre of land, being part of the premises conveyed to me by Henry W. Hills and Stephen Hills by warrantee deed dated November 25, 1905 . . . ."
On October 7, 1920, Georgianna Champigny conveyed to Fred and Mary Cousineo, using the same description, except as to names. On May 10, 1927, Fred and Mary Cousineo conveyed to Frank Koczka using the same phraseology "one-half acre of land". In the meantime, the plaintiff had secured title to the surrounding land. On June 1, 1932, Frank Koczka conveyed to the defendant using the following description: "Bounded north, south and west by land of Emorie Champigny, and east by the highway known as South Center Street, and containing one-half acre of land."
If the defendant is entitled to one-half acre of land, the rear line of her property includes the land in dispute. The *Page 23 
plaintiff contends, however, that although the defendant's grantor used the expression "one-half an acre of land" in his deed, as did his predecessors in title, the boundary line as contended by the plaintiff was acquiesced in and established by the acts and conduct of the defendant and her predecessors in title for a period of approximately 30 years, and that it is thus the true line.
Now, in this connection it is in evidence that before the conveyance was made, Victor Norman measured off the land he intended and did convey, 180 feet deep by 90 feet wide, and then went to the town clerk's office where the deed in evidence was drafted and signed by him. The defendant contended that this evidence was inadmissible, in that the terms of the deed are clear and unambiguous, and that there was no occasion to resort to evidence of any acts of the parties as an aid in arriving at the meaning of the deed. Of course this is the rule, as numerous cases hold. Ziulkoski vs. Barker,94 Conn. 491; Lakitsch vs. Brand, 99 id. 388; Boucher vs. Godfrey,
119 id. 622, 628; Craven vs. Butterfield, 80 Ind. 503;Harris vs. Woodard, 130 N.C. 580; Cathey vs. BuchananLumber Co., 151 id. 592.
But the contrary was not the real contention of the plaintiff. His claim of law is that in a conveyance of land when there is a conflict between fixed and known monuments mentioned in a deed and dimensions therein, then the fixed monuments must control. In other words, the plaintiff contends that Victor Norman, when he conveyed to Georgianna Campigny, had already set up certain stones as monuments which fixed the boundaries of the grantee's land no matter what quantity was mentioned in the deed. In the description of land conveyed by deed, known and fixed monuments will control courses and distances; and metes and bounds will convey the land embraced by them, though the quantity vary from that expressed in the deed; on the principle, that the less must yield to the greater certainty. Belden vs. Seymour, 8 Conn. 18, 24.
But I am wondering if such is the situation in the instant case. To be sure, when a deed contains references to known and fixed monuments and distances which result in a contradictory and uncertain description, then the distances must ordinarily give way, but this rule is not an imperative rule of law, but merely an instrument of construction wherewith to ascertain the always controlling intention of the grantor. When courses and distances yield the more logical result, they will *Page 24 
predominate. Russo vs. Corideo, 102 Conn. 663.
In all probability in this case Victor Norman in his original conveyance referred to above intended to convey "one-half acre of land" when he measured it off. There is no reference in the deed to any fixed or known monuments, but rather to land most of which he owned. I am inclined, therefore, to believe then that the evidence of Victor Norman and William Champigny was admissible rather to show that a mistake was made in the measurements of one-half acre, and not that a mistake was made in the deed, and I question that the evidence can be considered in the sense the plaintiff contends, or as the cited cases hold, as determinative of just what lands the defendant received by her deed. Now while this evidence was introduced for the purpose referred to and is not admissible for the primary purpose claimed by the plaintiff, it is of some significance as showing the first step in a course of conduct and acts over a period of years which I believe determines the ownership to the disputed land.
The second claim of the plaintiff is that he has acquired title by reason of adverse possession. I am inclined to believe he has. Victor Norman intended to convey just what he said in his deed, "one-half an acre of land". But from that time, August 29, 1907, to at least 1934 or 1935, the disputed land has been considered that of the adjoining owner rather than that of the defendant or her predecessors. Now, this may have been under a mistaken idea as to how far one-half acre extended back from Center Street, but such a mistake, when the other elements are present, does not prevent the acquiring of title by adverse possession.
The evidence is overwhelming in this regard in favor of the plaintiff. For instance, the photographs, Exhibits B, C, D, and E, show the clear line of demarcation between the plaintiff and defendant's land on the north, west and south sides thereof, produced by the plowing of the disputed land practically up to the line as contended by the plaintiff. The fence post at the southwest corner of the defendant's land as shown in photos B and D, and the only remaining evidence of a fence erected in 1925 by Fred Cousineo, a predecessor in title of the defendant, shows, as he testified, that this was considered the western line of his property. He testified to stones being in the west line of his property and being still there in 1926. These were apparently the stones referred to by Victor Norman and William Champigny as marking the west boundary *Page 25 
of the defendant's land. Victor Norman conveying what is now the defendant's land in 1907, cleared his land of stumps up to the line in question, as did the plaintiff on both the north and south sides of the defendant's land, and on the west side up to the line now contended by him as the correct one. In 1927, the Cousineos conveyed to Koczka, the defendant's immediate predecessor.
Now, if it be true that the plaintiff and his predecessors exercised dominion over the land in dispute for twenty or thirty years, and the defendant and her predecessors acquiesced till about 1934 or 1935, does the fact that it was all based upon a mistaken idea of where the line was, preclude title from being acquired by adverse possession? I do not believe the Connecticut law so holds.
French vs. Pearce, 8 Conn. 439, succeeded Bryan vs. Atwater,
5 Day 181, and both cases treat of this phase of acquiring of title by adverse possession. In French vs. Pearce, our Supreme Court said (p. 442): "An occupation of land, by the defendant as his own, under the plaintiff's eye, to what he supposed to be the dividing line between him and the plaintiff, and which, for many years, the plaintiff permitted without a question, from the mutual assent of the parties, is strong presumptive evidence of the true place of the line. . . By adverse possession is meant a possession hostile to the title of another; or, in other words, a disseisin of the premises; and by disseisin is understood an unwarrantable entry, putting the true owner out of his seisin."
The Court continued (p. 442), referring to Bryan vs. Atwater,supra: "The first principle asserted in that case is, that to render a possession adverse, it is not necessary that it should be accompanied with a claim of title and with the denial of the opposing title. The case next affirms that possession is never adverse, if it be under the legal proprietor and derived from him. After these preliminaries, it is enquired: `But more particularly, what, in point of law, is an adverse possession? It is,' say the court, `a possession, notunder the legal proprietor, but entered into without his consent,either, directly or indirectly given. It is a possession, by which he is disseised and ousted of the lands so possessed.' That there should remain no doubt, they next enquire, what constitutes a disseisin? After shewing negatively, that it is not requisite to enter claiming title, or denying the title of *Page 26 
the legal owner, they remark affirmatively, that it is only necessary for a person to enter and take possession of land ashis own; to take the rents and profits to himself; and to manage with the property as an owner manages with his own property; that is, the person thus possessing must act as if he were the true owner and accountable to no person for the land or its avails."
Continuing further, the Court said (p. 443): "If he intends a wrongful disseisin, his actual possession for fifteen years, gives him a title; or if he occupies what he believes to be his own, a similar possession gives him a title. Into the recesses of his mind, his motives or purposes, his guilt or innocence, no enquiry is made. It is for this obvious reason; that it is the visible and adverse possession, with an intention to possess, that constitutes its adverse character, and not the remote views or belief of the possessor . . . . It is obvious, that a person who takes possession, does not the less claim to hold it against him who before was seised, because he conscientiously believes, that he has right to possess . . . . But if it was intended to declare, that there was no disseisin at all, by reason of the before mentioned mistake, I cannot accede to the proposition. There was a possession; it was not under the true owner, but it was under a claim of right; and the rents and profits (if any) were received and appropriated to the possessor's use, without any supposed or assumed accountability. This is a disseisin, by all the cases on the subject, with every mark or indicium of one upon its face . . . . But when the possession is a permanent object, under a claim of right, however mistaken, what can be a disseisin, if this is not? . . . . It was adverse possession and disseisin (innocently happening) with the full intention of the mind to possess exclusively; and by necessary consequence, a seclusion of the owner from the seisin of his property . . . . . I agree with the learned court, that the intention of the possessor to claim adversely, is an essential ingredient. But the person who enters on land believing and claiming it to be his own, does thus enter and possess. The very nature of the act is an assertion of his own title, and the denial of the title of all others. It matters not, that the possessor was mistaken, and had he been better informed, would not have entered on the land. . . . . The possession is not the less adverse, because the person possessed intentionally, though innocently." French vs. Pearce is affirmed in Sherwood vs. Waller, 20 Conn. 262, 270, and *Page 27 Johnson vs. Gorham, 38 id. 513, 520, and other early Connecticut cases.
In Carney vs. Hennessey, 74 Conn. 107, at p. 110, the trial judge instructed the jury, first, that such adverse possession must have been known to and acquiesced in by the owner, or must have been so far notorious as to have been presumptively within the knowledge of the owner, and second, must have been held by the defendants and those under whom they claim, under a claim of title, or with a specific intent to claim the land as their own. Regarding this the Court (p. 111) said: "We think the record bears out these claims of the defendants, and that the charge, as a whole, upon these points, was liable to mislead the jury. If the owner of real estate is ousted of possession, and the ouster continued uninterruptedly for a period of fifteen years, by an open, visible, and exclusive possession in another, without the license or consent of the owner, such possession is presumed to be with the knowledge of the owner; School District vs. Lynch, 33 Conn. 330; and the jury should have been told that such facts, if true, would constitute presumptive notice of adverse possession to the owner.Wilson vs. Williams' Heirs, 52 Miss. 487, 493. Nor was it correct to tell the jury that the adverse possession of the defendants and those under whom they claim, must have been made under a claim of title, or under a claim that the land was their own. Bryan vs. Atwater, 5 Day 181; French vs.Pearce, 8 Conn. 439, 442; Johnson vs. Gorham, 38 id. 513."
Along similar lines the Court stated in Searles vs. DeLadson,81 Conn. 133, at p. 135: "It is the plaintiff's claim that at the time he received his deed, his grantor, Frank P. Clark, upon the facts found, was not ousted of the land in controversy by the entry and possession of the defendants, that entry and possession being under a mistaken belief as to the true boundary line between them and Clark. The claim is, that to make the possession adverse and constitute an ouster there must be an intent to disseize the owner, and that the belief that they owned to the line to which they occupied negatives such an intent, and their occupation will therefore be presumed to be in subordination to the title of the true owner. There are authorities which sustain this view. We had occasion to examine the question here presented in the case ofFrench vs. Pearce, 8 Conn. 439, where a similar claim was made. After a consideration of the authorities it was there held, following the earlier case of Bryan vs. Atwater, *Page 28 
5 Day 181, and cases in other jurisdictions, that to render possession adverse it was not necessary that it should be with a wrongful intent to disseize the true owner, or accompanied with a denial of his title, or with a claim of title in the person entering; and that where a person enters and takes possession of land as his own, taking the rents and profits to himself and managing with it as an owner manages with his own property, the possession is adverse and a disseizin. The very act is held to be an assertion of his own title and thus equivalent to a denial of the title of all others, and it does not matter that he was mistaken and that had he been better informed he would not have entered on the land. This has since been adhered to as the law in this State and still has our approval. There is no necessity, therefore, for a discussion of the arguments advanced by the plaintiff and the cases which he cites, by which a different view is claimed to be sustained."
On this phase of the case the defendant refers to several cases in other jurisdictions, holding a contrary view, but to none in Connecticut. To be sure, Hurlburt vs. Bussemey,101 Conn. 406, holds that possession must be without license or consent of the owner, and that the doctrine of adverse possession is to be taken strictly. But as the Connecticut cases referred to point out, the person who enters on land believing and claiming it to be his own, enters and possesses adversely, and it matters not that the possessor was mistaken.
The evidence warrants a conclusion that the plaintiff has acquired title by adverse possession to all the land "In Dispute".
The third point raised by the plaintiff is that the defendant's deed from Frank Koczka was unavailing to convey land "In Dispute" because he was out of possession under section 5020 of the General Statutes, Revision of 1930, which provides: "Any conveyance or lease, for any term, of any building, land or tenement, of which the grantor or lessor is ousted by the entry and possession of another, unless made to the person in actual possession, shall be void."
In the light of the holding that the plaintiff and his predecessors in title have been in actual and conclusive possession of the land "In Dispute" for a period of more than 15 years, then Koczka was out of possession of the land "In Dispute" and could not legally convey the same to the defendant.
The plaintiff's claim of damages was greatly exaggerated. *Page 29 
The evidence of William L. Harris, Jr., the Hartford County Farm Bureau Agent, settled that.
 The issues are found and judgment is directed for the plaintiff on the defendant's counterclaim, and for the plaintiff on his complaint, awarding possession to him, and settling the true line of the west boundary of the defendant's property as the line marked with the stakes as evidenced on Plaintiff's Exhibit A, and as contended by the plaintiff. The plaintiff is entitled to only nominal damages of five dollars.