[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Darlene M. Garcia has brought this action for partition against her aunt, Mary T. Rizzitelli, and although he is not a record owner, against her uncle. Antonio M. Lapiola.[1] He has in CT Page 6561 turn counter claimed against Garcia and cross claimed against Rizzitelli claiming adverse possession of a portion of the premises described in the plaintiff's complaint. Garcia opposes Lapiola's claims. At trial Rizzitelli did not contest her brother's adverse claim, but did oppose her nieces's claim for an order of the court partitioning the premises by sale.
 I
The court finds for the defendants on the plaintiff's claim for partition. Partition in kind is not practicable and partition by sale could not be conveniently and equitably made at this time without working an injustice. Furthermore, the plaintiff is not entitled to maintain the action for partition of the premises because of Antonio Lapiola's possession of a part of it. Since judgment of partition by sale is not granted for the plaintiff there are no sale proceeds to be distributed, whether to owners or a mortgagee.
The court finds for the defendant counter claimant, cross complainant Antonio Lapiola and against the plaintiff Garcia and the defendant Rizzitelli, on Lapiola's claim of adverse possession and rules that title should be quieted in him to the premises he has adversely possessed.
 II
Connecticut's statutory right to partition is founded on the principle that no person can be compelled to remain the owner with another of real property. Johnson v. Olmsted,49 Conn. 509 (1882). See Conn. Gen. Stat. 52-495; 52-500
(1989).
Lots 44, 43 and 38 on a map of "Bronx Park" in evidence run from west to east on Tremont Avenue in Bridgeport. Lot 44 belongs to Darlene Garcia and Mary Rizzitelli, each of whom own a one half interest as tenants in common and no one contests that.
Title to the easterly two thirds of Lot 43 is disputed. Darlene Garcia claims an undivided one half of Lot 43 by deed from her grandmother to her deceased mother and by Certificate of Devise to her from her mother's estate. Antonio Lapiola claims title to that some easterly portion of Lot 43 by Adverse Possession.
Section 52-495 of the statutes provides for partition in kind, whereas 52-500 provides for partition by sale. Harrison v. Int'l. Silver Co., 78 Conn. 417, 420 (1905). The power to order a sale rests on the same ground as the power to order CT Page 6562 partition in kind, and is an alternative mode of relief where partition in kind is not practicable. Johnson, 49 Conn. 509,517. It is important to note that the sale statute in subsection (a) of 52-500 provides that the court may order a sale, "when, in the opinion of the court, a sale will better promote the interests of the owners." Connecticut has favored partition in kind over sale, except where the court finds that a sale of the property would better promote the interests of the owners. Wilcox v. Willard Shopping Center Assoc., 208 Conn. 318,325 (1988). The court must consider numerous factors before ordering a sale and it must find that (1) physical attributes of the land are such that a partition in kind is impracticable or inequitable; (2) the interests of the owners would better be promoted by a partition by sale. Delfino v. Vealencis, 181 Conn. 533, 537-538 (1980).
The plaintiff's and defendant Rizzitelli's premises consists of a two family house with garage and driveway. It is presently used as a two family house, one unit having been occupied by the defendant Rizzitelli for years and the other rented out to tenants by the plaintiff who keeps the rent from their tenancy. The defendant Rizzitelli is elderly and suffering certain health problems. She hoped to live out her remaining years at the premises. The plaintiff stopped residing in 184-186 Tremont Street when she became 17 and has little day to day contact with what went on there since that time.
A common yard to the premises, common walls and roof would have to be maintained by each owner after partition in kind. The court concludes that partition in kind is impractical and that the partition statutes do not contemplate a judgment requiring two parties who are co-owners being forced to enter a condominium arrangement under the Common Interest Ownership Act to provide for maintenance of such common elements. See Wilcox v. Willard Shopping Center Associates, 208 Conn. 318, 325. Furthermore, courts of law are ill prepared to supply by way of enforced judgment the multiplicity of detail of condominium declarations and by laws that parties normally agree to and prepare themselves to govern how common structural elements will be maintained.
The plaintiff in this case is not interested in having a partition made of the premises except by sale. Because of the presumption in the law that partition in kind is in the best interests of the owners, the burden of proof rests on the party seeking a sale to demonstrate that it is a better remedy. Borzencki v. Estate of Stakum, 195 Conn. 368, 372 (1985). This court is limited to rendering a judgment of either partition in kind or by sale. Klaus v. Klaus, 143 Conn. 218, 221-222 (1956). CT Page 6563
The court takes judicial notice that Connecticut is in a flat real estate market where property values of residential real estate have plummeted, many mortgage lenders are financially distressed and buyers are few. Even in the best of times, an auction or forced sale typically brings in a lesser price than would a sale made between a willing buyer and sellers who are under no distress or compulsion to sell. The court concludes that a forced sale at this time would probably not be in the interests of either the plaintiff or defendant Rizzitelli since it is likely to realize far less of a purchase price after committee expenses are allowed than the true value of the real estate if sold under better and more normal market conditions. It is worth noting, that evidence was offered that when the property was listed for sale by the two record owners there were no offers from buyers in the six months it was on the market. The sale cannot be said to be in the interests of the defendant Rizzitelli at this time given the limitations on her ability to finance any bid she might make at such a distress sale. The court finds that to order a sale at this time would be inequitable and work an injustice.
Finally, although no authority has been cited by any of the parties, there remains the problem that in addition to the fact Antonio Lapiola claims a part of the premises by virtue adverse possession, he is in actual possession of a part of premises.[2] He has maintained a garden, and garage in which he stores things and exercised other possessory uses over part of the premises, including the granting of permission to the plaintiff's tenant to go upon the premises for certain limited purposes.
Although the plaintiff Ms. Garcia is authorized by statute to bring a partition action as a tenant in common with the defendant Mrs. Rizzitelli, the statute does not permit the plaintiff to maintain the action for partition much less receive such a remedy where another third person like Lapiola is in actual possession of part of the premises and claims a right to that possession of part of what is sought to be partitioned. Adam v. The Ames Iron Co. and others, 24 Conn. 230 (1855). The plaintiff must be in possession of the premises at the time the writ is brought. Adam, supra, at 233. As a general principle, in the absence of contrary statutory provisions, partition will not lie where the legal title is in dispute, and the petitioner will first be required to establish title in an appropriate proceeding at law. Annotation, Possessory Requirements for Cotenant's Suit for Partition, 171 A.L.R. 932, 933 (1947). [hereinafter Possessory Requirements].
There is no question Antonio Lapiola is in actual possession of a part of the premises; that he was at the time CT Page 6564 the writ was brought and was when the case was tried. Paragraph 9 of the plaintiff's amended complaint, dated February 9, 1989, states that Antonio Lapiola has claimed an interest in a portion of the premises.
To maintain an action for partition in Connecticut the plaintiff must have possession of the premises or an immediate right to possession. Penfield v. Jarvis, 175 Conn. 403, 467
(1978).
Where a plaintiff in an action for partition is out of possession of some portion of the premises and another person in possession claims to hold adversely, she must first bring a separate action for ejectment and prevail before her action for partition can lie and a judgment therefor issue. Adam, supra p. 6. It makes no difference whether the person claiming adversely is a cotenant or stranger like Antonio Lapiola. Adam, supra; Harrison, supra p. 3; Struzinski v. Struzinski, 133 Conn. 424
(1947) Possessory Requirements, supra at 950-951.
Although this is an old rule it is still a good rule which makes particular sense where a partition by sale is sought, since it is logical to expect that a potential buyer wants to know what it is he is getting for his money and that he is getting occupancy of the entirety of what he buys at the time he pays his purchase price. He cannot know that unless there is some final judgment in effect resolving the claims of the warring parties at the time the premises is offered for sale.
For all of these reasons, the court, therefore, finds for each defendant on the plaintiff's complaint for partition.
 III
The court will now turn to the Adverse Possession claims of Antonio Lapiola. He owns and lives at premises known as 160 Tremont Avenue, Bridgeport. This land is shown as Lot 38 on a map in evidence entitled "Bronx Park" owned previously by Apargo and Winter.
Antonio Lapiola owns Lot 38 which borders Lot 43 on the same map. Lots 43 and 44 comprise the premises for which the plaintiff is seeking partition.
At one time Mr. Lapiola's mother, Maria, owned Lots 38, 43 and 44. Maria Lapiola had first obtained sole title to Lot 43 (174 Tremont Avenue) and Lot 44 (184-186 Tremont Avenue) when her husband, Salvatore Lapiola deeded then to her by Quit Claim Deed recorded in Vol. 980, pg. 382 of the Bridgeport Land Records. The family homestead was located on Lot 38 (160 CT Page 6565 Tremont Avenue). At one time Maria Lapiola, her late husband and children lived in the homestead. A garage for the homestead was located on Lot 43 and the adjoining Lot 44 remained undeveloped during this time.
In 1962, the two family house located on Lot 44 was built by Antonio Lapiola. When Lapiola constructed this house, two of his sisters, the plaintiff's mother, Palma Garcia and the defendant Rizzitelli occupied a two family house with their respective families elsewhere in Bridgeport.
Because of Antonio Lapiola's marriage problems it was thought prudent for him to convey to Maria Lapiola.
At a later date, by deed recorded in Volume 1305, page 133 of the Bridgeport Land Records, Maria Lapiola deeded off the two family house to her daughters Palma Garcia and Mary Rizzitelli. Included in this deed were Lots 43 and 44. Rosalie Palmieri, the witness on that deed, gave credible testimony that Maria Lapiola who did not read or write English and signed her name with an "X" had said prior to signing her deed that it was to, convey only that portion of Lot 43 on the side of the chain link fence and dividing wall which is nearest to and adjacent to the two family house. The legal description, however, on Maria's deed to Palma and Mary included both Lots 43 and 44 on the previously referenced map, and described not only the two family house, but also the land east of the chain link fence and wall, containing the garage appurtenant to the Maria Lapiola homestead and the garden.
The plaintiff Antonio Lapiola has the burden of proof to prove adverse possession by clear and convincing proof, that is "a degree of belief that is between the belief required in the average civil case and the belief of guilt beyond a reasonable doubt required in a criminal action." Clark v. Drska, 1 Conn. App. 481,487 (1984).
He must show that he has possession. Possession is the exercise of dominion and control over the land. It is sometimes said that the adverse claimant must show ouster of the record owner. Clark, supra. Ouster means that the record title holder is out of possession under such circumstances, that the party in possession would if that possession continued for 15 years acquire title by adverse possession. Struzinski,133 Conn. at 424. One of the most effective means of proving a disseisin or ouster is by showing the exercise of acts of dominion over the land by the adverse claimant. Bryan v. Atwater, 5 Day 181 (1811). The character of the land, some of which could be cultivated, being a small parcel improved by driveway and garage, viewed in light of the proof of acts of ownership, CT Page 6566 reveals that it was suited for and susceptible of being used for storage of automobiles and possessions, parking, gardening and lawns appurtenant to the old Maria Lapiola homestead and that is exactly how Antonio Lapiola caused it to be used, either by himself or by those who acted with his permission and authorization. There is no question that he has possession as shown by his fence, granting of permission to others including the plaintiff's tenant's children to make limited use of the premises, his maintenance, and growing of grapes and vegetables, use of the premises for parking and storage, and by payment of taxes, and numerous similar acts by which he clearly exercised dominion or control over the premises. From all the credible evidence before the court, any instances of other family members' assistance to Antonio with maintenance were isolated and support the conclusion of the court that the great bulk of maintenance activities were conducted by him or by persons he paid.
Lapiola must show he has so maintained that possession for 15 years. He has proved his possession from the present back to his mother's death in April of 1973, a period of time sufficient to meet the statutory minimum requirement, prior to the time Darlene Garcia brought suit.
His 15 year possession must be proved continuous and uninterrupted possession. Clark, supra p. 10. In order to interrupt the continuity of possession of an adverse holder, the record owner must "assert his claim to the land, perform some act that would reinstate him in possession before he can gain what he has lost." Woycik v. Woycik, 13 Conn. App. 518 (1988). See also Conn. Gen. Stat. 52-575 (1989). Neither Palma Garcia nor Mary Rizzitelli ever asserted such a claim. Darlene Garcia did not know of any record title in her mother's name until a title search was done after her mother's death and she made no attempt to partition the premises claimed by Antonio until her complaint dated August 10, 1988. That complaint was after the 15 year possession of the disputed premises by her uncle Antonio which had run from Maria Lapiola's death on April 28, 1973. It is true that members of the family made some permissive uses of the premises during Antonio Lapiola's period of adverse possession, but continuity of an adverse possession claimant's possession is not broken by isolated trespasses or by use of the area by those who are given permission from the claimant. Lucas v. Crofoot, 95 Conn. 619 (1921).
Lapiola must also show that his possession was exclusive. Whitney v. Turmel, 180 Conn. 147 (1980); Clark, supra p. 10. This means that Antonio Lapiola alone must have exercised dominion and control over the premises, for the required minimum holding period. The court finds he did so. While there is CT Page 6567 evidence that others sometimes walked over, or played upon or stored things on the premises, it is clear to this court that they did so with his permission. Possession is not exclusive if an adverse claimant merely shares dominion with other users . Whitney, supra; Woycik, supra. The court finds that there was no such sharing of dominion by Lapiola. The kind of permissive use he gave to others who were adults or children in the family or tenants of his niece gave them a limited use only within the confines of his permission. That kind of grant of limited permissive use to others does not diminish Lapiola's exercise of dominion and control over how the land was to be used, which the court finds that he alone exercised. It confirms his exercise of control.
The possession must be hostile, that is without license or consent of the record owners. Goldman v. Quadrato, 142 Conn. 398,402 (1955). Neither Palma Garcia nor Mary Rizzitelli ever gave permission or consent to Antonio to use the land. In fact, any use others, including them, made of the land was with his consent. Lapiola's possession is found to be hostile.
That possession must be notorious in the sense of being or constituting something that is commonly known. The purpose of that requirement is to give actual notice to the record owner that a claim contrary to his ownership is being asserted or to lay a foundation for finding of constructive notice. Robinson v. Myers, 156 Conn. 510, 518 (1968). Maria Lapiola resided with Antonio Lapiola at 160 Tremont Avenue until her death on April 28, 1973. After the death of Maria Lapiola, Antonio Lapiola was appointed executor of her estate on April 16, 1974. The Certificate of Devise from the Estate of Maria Lapiola recorded at Vol. 1526 page 209 of the Bridgeport Land Records purported to pass title of Lots 43 and 44 (174 Tremont Avenue and 184-186 Tremont Avenue) to Antonio Lapiola along with Lot 38 known as 160 Tremont Avenue. After his mother's death, Antonio Lapiola continued to keep his garage locked; mowed the lawn, maintained his grape arbor, garden and driveway on the disputed premises. Any items stored in the garage were either his or stored there with his permission.
The defendant Mary Rizzitelli recognized and knew that Lapiola owned and possessed the portion of Lot 43 to the east of the cyclone chain link "Page" fence and wall and by her testimony at trial made admission of this.
Lapiola also paid the tax bills. Although the Acevedo family who rent from Darlene Garcia have on occasion used the disputed premises, they have done so only with the permission of Lapiola, except for some trespasses by the Acevedo children which Mrs. Acevedo discouraged. The plaintiff has CT Page 6568 satisfactorily proved that possession of the premises by Lapiola has been notorious, not secretive, and was open and visible to the world around him. The court finds Lapiola's possession here was notorious. Except for a brief time when he married, he always lived in the family homestead at 160 Tremont Avenue and used the garage on the disputed premises since 1949. The electric power for the garage was always connected to the service at the homestead. Antonio Lapiola paid these bills. He fenced off the property he now claims with a five foot high steel chain link cyclone or "Page" style fence, and paid for that fence. The remainder of the dividing line was marked by a wall. The property was known as Tony's garden. He stored things in the garage, locked it, and people did not use it without his permission. The garage was built for and always an accessory building used with the homestead he occupied at 160 Tremont Avenue. Mrs. Rizzitelli acknowledged that he "owned" it and Mr. Lapiola's testimony that his sister Palma Garcia during her lifetime acknowledged that the disputed premises was his is also credible.
The possession must be under a claim of right. Clark v. Drska, supra. p. 10. Lapiola at all times used the premises under a claim of right. After his mother's death in 1973, he received a Certificate of Devise from the Probate Court, dated October 8, 1974, to both Lots 43 and 44. Our case law, however, does not require a real documentary claim of title beyond that established by the possessor's hostile acts asserting the right to possess. Johnson v. Gorham, 38 Conn. 513 (1871): Carney v Hennessey, 74 Conn. 107 (1901); Ahern v. The Travelers Insurance Co., 108 Conn. 1 (1928). Lapiola has at all times by his adverse and hostile use and dominion satisfied the requirement that his possession be under a claim of right. Since the death of his mother, Lapiola has regarded himself as the sole owner of the property and has never regarded his sisters or plaintiff niece, or anyone else, as having any right or interest in the premises he now claims. See Ruick v. Twarkins, 171 Conn. 149,154 (1976).
The adverse holder must hold the premises with the intent to use the premises as his own. Clark, supra p. 10, at 484. His use of the premises for parking, storage, workshop purposes, gardening and granting of permission to others to use the premises shows his exercise of dominion and control and that by his acts he not only intended to use the premises as his own but did in fact so use it.
The court finds proved by clear and convincing evidence, that as to the premises more particularly bounded and described in the following legal description that the plaintiff has been ousted of possession in that neither she or her predecessor in CT Page 6569 title ever had possession of the premises, that the defendant cross complainant Antonio Lapiola has had possession of the premises for more than 15 years, that his possession has been continuous, uninterrupted, open, visible, exclusive, hostile, notorious, made under a claim of right with the intent to use the property as his own and that in fact for the entire period of possession he has used it as his own:
 All that certain piece or parcel of land with the buildings and improvements thereon standing, being shown and designated as a portion of Lot 43 on a certain map entitled Map of Property located on Tremont Avenue, Bridgeport, Connecticut prepared for Tony Lapiola, Scale: 1" = 20' dated May 5, 1989 by Kasper Associates, Inc., bounded and described as follows:
 Commencing at a point on the Northerly street line of Tremont Avenue at the Southwesterly corner of Lot #38 land now or formerly of Tony Lapiola, said point also being the Southeasterly corner of Lot 43.
 Thence Northwesterly along the Northerly street line of Tremont Avenue the following (2) Two courses
 N 77 deg. — 30' — 42" W 4.20 feet N 87 deg. — 07' — 01" W 12.90 feet to a point,
 Thence N 3 deg. — 21' — 46" E; Along a chain link fence for a distance of 84.00 feet to a point.
 Thence continuing N 3 deg. — 21' — 46" E Along land now or formerly of Palma Garcia Mary Theresa Rizzitelli for a distance of 24.00 feet to a point
 Thence Southeasterly; Along land now or formerly of Sinhorinha Souza the following (2) two courses
 S 87 deg. — 07' — 01" E 26.94 feet S 84 deg. — 54' — 06" E 7.93 feet to a point
Thence S 12 deg. — 41' — 22" W CT Page 6570 Along Lot #38 — Land now or formerly of Tony Lapiola for a distance of 110.00 feet to the point and place of commencement. Said parcel contains 2,812 square feet.
Title to these premises is quieted and settled in Antonio Lapiola , subject to such lien as may exist by virtue of a mortgage in the face amount of $9,900.00 from Palma Garcia and Mary Theresa Rizzitelli to Mary Lapiola, individually and as trustee, dated February 22, 1965, and recorded in Volume 1305, page 136, Bridgeport Land Records, and subject to a mortgage in the face amount of $10,400.00 to People's Savings Bank Bridgeport dated October 28, 1982 and recorded in the Bridgeport Land Records, Volume 1679, page 400.[3]
The defendant cross complainant Lapiola has also sought injunctive relief against the defendants barring them from interfering with his control and ownership. Award of that equitable relief is not warranted. Lapiola has an adequate, remedy at law to quiet his title; Mary Rizzitelli has admitted that the disputed premises is his; Darlene Garcia has never attempted to grant some right to her tenants, the Acevedos, to use the disputed premises Lapiola claims, nor is there any evidence she did so herself. Injunctive relief is denied.
The plaintiff, in her Proposed Conclusions of Law, seeks a finding that no mortgage is owed by the current owners to the estate of Maria Lapiola. Such relief is denied. That kind of relief is not claimed in the plaintiff's prayer for relief, therefore there was no notice to any party that such relief was sought, nor is it appropriate to award it. Furthermore, there are separate statutory provisions which have not been pled in this case to obtain relief by way of release of a mortgage lien which secures a note which has been paid, or to seek discharge of a lien which is stale, all of which involve due process requirements of notice to those who might be affected by any such judgment, including in this case any other persons who are not parties to this lawsuit and might have been heirs at law of Maria Lapiola. Finally, since partition by sale is denied there are no sales proceeds to be distributed whether to owners or a mortgagee.
In accordance with this Memorandum of Decision the Judgment is entered for the defendants on the plaintiff's complaint and in favor of the defendant Antonio Lapiola on his counterclaim and cross claim, second count.
FLYNN, JUDGE.